HENRY WINDLE *vs.* W. B. JORDAN.

Androscoggin.    Opinion May 15, 1883.

*Livery-stable keeper.   Contract.   Vicious horse.   Burden of proof.   Practice.*
A livery-stable keeper who lets a horse for hire for a trip, impliedly promises that the horse is a kind and suitable one for the purpose for which he is let, and not vicious, nor in the habit of kicking.

In assumpsit to recover damages for an injury received by a kick from a horse, hired of the keeper of a livery stable, while being driven with ordinary care, the defense was, that the defendant warned the plaintiff, at the time of letting the horse, that the horse was liable to kick if struck on the rump or flank, and the plaintiff agreed to take that risk, and that the injury was caused by the plaintiff's act in thus striking the horse. *Held*, that the burden of proof, after proof of the facts declared upon in the writ, shifted and rested upon the defendant, to satisfy the jury of the truth of the matters, upon which he relied, to avoid liability for his broken contract.

ON EXCEPTIONS and motion to set aside the verdict.

Assumpsit to recover damages for an injury received from the kick of a horse which the plaintiff had hired from the defendant and was driving. The writ was dated March 26, 1880, and contained the following declaration:

### [Declaration.]

"In a plea of the case, for that the said defendant, at said Lisbon, on the second day of September, in the year of our Lord, one thousand eight hundred and seventy-nine, in consideration that the plaintiff at the special instance and request of the defendant, had hired of him one horse and wagon for the purpose of riding from Lisbon, aforesaid, to Lewiston, in said county, and in return from said Lewiston to said Lisbon, for the price and hire of a reasonable sum of money, to wit: two dollars, and for other good and valuable considerations, then and there promised the plaintiff that the said horse was sound, kind, safe, and serviceable, and free from the vice of kicking, and that the same would perform well when harnessed in said wagon, and was suitable to perform said purpose and service.

"And the plaintiff in fact saith, that he, confiding in said promise of the said defendant, did, on the second day of September, aforesaid, set forward on said purpose and service with said wagon, drawn by said horse of the defendant, hired for the purpose aforesaid, as aforesaid.

"Yet the said defendant did not regard his promise, aforesaid, but then and there craftily and subtly deceived the plaintiff in this, that the said horse was then and there unkind, unsafe, unsound, and unsuitable for said purpose and service, and that

said horse was not free from the vice of kicking, but on the contrary said horse was then and there in the habit of viciously and violently kicking, all of which the said defendant then and there well knew.

"And the plaintiff avers that, in the performance of said service, the said horse was driven and managed by the plaintiff with due care.

"Yet, by reason of the said unkindness, unsoundness, and unsuitableness of the said horse for said purpose and service, the said horse then and there became restive, violent, furious, and uncontrolable, and then and there, while in said service, to wit: at said Lewiston, the said horse viciously and violently kicked the plaintiff upon his left knee and broke the knee-cap thereof, and then and there kicked the plaintiff upon his right leg and upon his thumb and finger, all without the fault of the plaintiff, and the plaintiff was thereby then and there greatly and permanently injured in his left knee, right leg, and thumb and finger, and by reason of his said wounds and injuries, then and there received, as aforesaid, the plaintiff then and there, for a long time afterwards, suffered great pain and anxiety, and became sick, sore, lame, disordered, and incapable of transacting his ordinary and necessary labor, affairs, and business; and so continued for a long space of time, to wit: ever since.

"And the plaintiff avers that his said injuries are incurable, that by reason of said wounds, injuries, and bruises so received, as aforesaid, he was obliged to expend, and did expend large sums of money, to wit: three hundred dollars, in endeavoring to be cured of said wounds and injuries, occasioned as aforesaid, and for board, nursing, medicine, and attendance.

The plea was the general issue. The verdict was for the plaintiff for the sum of nine hundred and thirty-four dollars.

The opinion states other material facts.

*Hutchinson and Savage*, for the plaintiff, cited: *Darby* v. *Hayford*, 56 Maine, 249; *Gardner* v. *Gooch*, 48 Maine, 494; *Harpswell* v. *Phipsburg*, 29 Maine, 315; *Purrington* v. *Pierce*, 38 Maine, 449; *Stone* v. *Redman*, 38 Maine, 580; *Rogers* v. *K. & P. R. R. Co*, 38 Maine, 230; *McIntosh* v. *Bartlett*, 67

Maine, 130; *Bachellor* v. *Pinkham*, 68 Maine, 253; *Tarbox* v. *Eastern Steamboat Co.* 50 Maine, 345; *Woodcock* v. *Calais*, 68 Maine, 244; *Brackett* v. *Hayden*, 15 Maine, 347; *Sawyer* v. *Vaughan*, 25 Maine, 337; *Towsey* v. *Shook*, 3 Blackf. 267 (25 Am. Dec. 109).

*Frye, Cotton and White*, for the defendant.

The plaintiff elected to frame his declaration upon an express contract. He might have declared in tort, and thus relied upon implied legal duties and obligations of the defendant, growing out of the contract of hire. The defendant pleaded the general issue, denying the promise. The case discloses an actual contest as to what contract was in fact made. The plaintiff and his witnesses claiming one thing, the defendant and his witnesses another. The plaintiff did not attempt to sustain his case upon the general obligations of a bailor.

Had this been an action sounding in tort for an alleged negligence on the part of the defendant in failing to disclose claimed faults in the horse, and founded on a legal duty on his part to make such disclosure, proof of the letting and failure to inform the plaintiff, would have perhaps cast on the defendant a burden such as the court in this case put upon him.

But plaintiff's action being on a contract, rulings applicable to the case of a contract ought to have been given. See Wharton Ev. § 357; *Tarbox* v. *Steamboat Co.* 50 Maine, 339; *State* v. *Flye*, 26 Maine, 312; *Powers* v. *Russell*, 13 Pick. 76; *Ross* v. *Gould*, 5 Greenl. 210.

It should be remembered that the defendant did not admit the contract as declared on, and attempted to be sustained by the plaintiff and his witnesses, and then attempt to avoid its force by another and distinct proposition. The issue between the parties was first as to what the contract actually was. The plaintiff alleging an unconditional contract, the defendant denying it.

The counsel further contended that the instructions upon the question of the due care of the plaintiff were not all that the defendant was entitled to have given, and cited: *Benson* v.

*Titcomb,* 72 Maine, 31 ; *Lane* v. *Crombie,* 12 Pick. 177 ; *I. & St. L. R. R. Co.* v. *Evans,* 6 Cent. Law J. 197 ; *Heinemann* v. *Heard,* 62 N. Y. Ct. App. 448 ; Shear. & Redf. Neg. § 43, and note.

BARROWS, J. The fallacy upon which the defendant's complaints of the instructions given to the jury are based, consists in the assumption that it was a special and express contract that the horse was kind and free from vice, that the plaintiff declared upon, instead of the promise implied by law and growing out of the relation of the parties as bailor and bailee of the animal for hire. It is true that the plaintiff and his witness to the contract of hiring, testify that both the defendant and his hostler recommended and warranted the horse, except in the matter of laziness, but that testimony was not essential to the plaintiff's case.

When it was proved and admitted that the defendant was a livery-stable keeper, and that he let the horse for hire to the plaintiff for the trip, the law settles the contract upon the breach of which the plaintiff counts ; and if the defendant claims to be relieved by reason of any special negotiation between the parties, through which the plaintiff assumed any risk which the law would not otherwise impose on him, or if he gave the plaintiff any particular information with regard to the habits of the horse, which called for special and extraordinary care on the part of the plaintiff in driving, as to such matters the burden of proof rested on the defendant, and the jury were rightly so instructed.

It was not incumbent on the plaintiff to prove that no such exceptional element entered into his contract. The burden rested upon the party which affirmed that it did. There was no controversy between the parties as to what the contract was, except what the defendant introduced by undertaking to satisfy the jury that there was superadded to it, something out of the ordinary course, which affected the mutual obligations, duties, and liabilities of the parties to each other.

The substance of the defence was not that the horse was a kind horse, suitable to let, and not liable to kick when driven with

ordinary care, as he should have been to fulfill the contract on the part of the defendant in the particular as to which the plaintiff alleged a breach, but that when the horse was let he told the plaintiff, " if he took her he must not strike her on the rump, for she is liable to kick—on the rump, or on the flank—and if he took her he must take her on his own risk ; he said he would run the risk," and that after the horse was brought back there were marks of the whip on and under her flank, upon the strength of which he claimed that her kicking was caused by the plaintiff's neglect of his injunction.   To make this defence avail as an excuse for the breach of his contract in letting a vicious horse, defendant must establish a fact which was outside of the contract declared on, to wit : that the plaintiff was informed of the vice of the horse and agreed to take the risk, or that after receiving such information he so conducted as to cause the accident himself. But all depended upon proof of matters which were outside of the issue tendered by the plaintiff ; for it could not be said that it would be a want of ordinary care to strike a horse with the whip on the rump or flank, unless the person in charge had been informed that if so struck he was likely to become unmanageable and kick.   A vital element in the proof here was, the giving of the warning, which the defendant asserted and plaintiff denied. It was no part of plaintiff's duty to prove the negative.   The defendant held the affirmative, and the burden was on him.   If defendant would exonerate himself from compensating the plaintiff for a damage suffered by reason of what was, upon his own showing, a breach of the contract that he enters into every time he lets a horse for hire, it was incumbent upon him to satisfy the jury of the facts that would have that effect.   Here was a new and distinct question raised by the defendant.  *Tarbox* v. *Eastern Steamboat Co.* 50 Maine, 339, 345 ; *Brackett* v. *Hayden*, 15 Maine, 347.

But the defendant further complains that the presiding judge omitted to instruct the jury " that the burden of proof was upon the plaintiff to show affirmatively that his acts in no way contributed to the alleged injury," and also, " to show affirmatively that in driving said horse at the time of the alleged injury, he

was in the exercise of ordinary care." If the presiding judge had given the first of these instructions upon the case here presented, the plaintiff might have had ground of exception; for unless he had been warned that a blow upon the flank with the whip was likely to cause the horse to kick, an act of his might have contributed to produce the injury while it would not preclude his recovery.

But the jury had, among others, the following instructions: "If the plaintiff was injured through his own fault in striking the horse or using him in a manner which he ought not, so that he himself was careless, and that carelessness contributed to produce the injury which he received, he cannot recover; such is the law; and your verdict should be for the defendant."

"If the defendant disclosed to the plaintiff the fault of the horse, that he was liable to kick when struck, or struck in a certain manner, so that the plaintiff had knowledge of the viciousness of the horse, and then took the risk to use him, and then struck him in the manner which he was admonished it would not be safe to do, and the horse was thereby caused to kick, and the plaintiff thereby received his injury, he cannot recover."

"If you find that he was not made to kick by any such treatment, by any blow inflicted, or by any other fault on the part of the plaintiff, but kicked through viciousness, a viciousness known to the defendant, and because he was liable to kick when not struck, when there was no provoking cause, and the plaintiff was without fault, why then, that ground of defence fails."

"If you are satisfied that the defendant did not disclose the fact that the horse was accustomed to kick, under any circumstances, to the plaintiff, then I understand his learned counsel to concede that if the plaintiff, while using the horse with ordinary care and prudence, was injured by a kick from him on account of the vicious character, the vicious habits, so to speak, of the horse, that he can recover."

We think that these and other instructions given so far covered the case that if the defendant desired a more distinct instruction as to the burden of proof upon the question of due care, he should have requested it; and that, in the absence of any such

request, exceptions ought not to be sustained for the omission. *Harpswell* v. *Phipsburg*, 29 Maine, 315 ; *Stone* v. *Redman*, 38 Maine, 580.

The motion cannot be sustained. The vicious character of the horse and its unfitness to be let from a livery stable, was abundantly established by the testimony adduced by defendant, as well as by plaintiff. Upon the question of avoidance of liability by warning given, it is worthy of remark that the defendant and his principal witness, the hostler, do not agree as to the character and extent of the warning ; and the plaintiff and his witness emphatically deny that there was any whatever. The defendant must abide by the finding of the jury.

*Motion and exceptions overruled.*

APPLETON, C. J., DANFORTH, VIRGIN, PETERS and SYMONDS, JJ., concurred.