## Conn, Appellant, v. Hunsberger.

*Bailment—Livery-stable keeper—Implied warranty of fitness of horse—Negligence—Vicious horse.*

1. The relation between a livery-stable keeper and his customer is that of bailor and bailee for hire, and the former assumes the liability which the contract of bailment imposes. When the bailor lets a horse for hire he impliedly promises or warrants that the animal is fit and suitable for the purpose for which it is hired; he warrants that the horse is not unruly or vicious but is safe, manageable and suitable for the use for which the customer has hired it.

2. It is the duty of a livery-stable keeper to inform himself of the habits and disposition of the horses which he keeps in his stable for hire, and if he knows that they are dangerous and unsuitable or by the exercise of reasonable care could ascertain the fact, he is liable for any injuries to his customers resulting from their vicious propensities. The law will not permit him to close his eyes and his ears, thereby remaining ignorant of the vicious habits of his horses, and relieve him from liability for injuries to a customer resulting from such habits. In his contract of hiring he impliedly engages that he knows or has exercised reasonable care to ascertain the habits of his horses, and says to his customer that the horse which he lets is safe and suitable for the purpose for which he has hired it. His warranty is against defects or vicious habits which he knows or by the exercise of proper care could know, and if he fails to exercise such care and it occasions injury to his customer, he will not

be relieved of liability though he did not actually know the horse was unsuitable for the service.

3. Where in an action against a livery-stable keeper to recover damages for injuries caused by the conduct of a horse hired from the defendant by the plaintiff, the latter introduces evidence to the effect that the horse was vicious, wild, and unmanageable, the burden is then imposed upon the defendant to show that the horse was not vicious or unruly, or that the defendant was ignorant of the vicious character of the animal, and had exercised proper care to inform himself as to its habits. The defendant may also show in his defense, that the conduct of the animal was occasioned by the hirer, or by the happening of an event that would cause such conduct by a gentle or well-trained horse and one not addicted to a vicious habit, or that the hirer knew or was informed of the habits of the horse and he assumed the risk, or any other matter which would relieve the liveryman from the alleged negligence or breach of implied warranty.

4. In such a case where the statement of claim shows a contract of hiring out of which an implied warranty arises, the mere fact that the statement contains also an averment of a special warranty, will not prevent the plaintiff, if the evidence is sufficient, from recovering upon the implied warranty.

5. Where a person is injured by the vicious conduct of a horse hired from a livery-stable keeper, he may proceed against the livery-stable keeper either by an action for a breach of the implied warranty of the fitness of the horse, or by an action in tort for negligence.

Argued Jan. 8, 1909. Appeal, No. 231, Jan. T., 1908, by plaintiff, from judgment of C. P. No. 4, Phila. Co., March T., 1907, No. 3,673, on verdict for defendant in case of Charles O. Conn v. Harry K. Hunsberger. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Trespass against a livery-stable keeper to recover damages for personal injuries caused by the vicious conduct of a horse. Before AUDENRIED, J.

The facts appear by the opinion of the Supreme Court.

At the trial the court gave binding instructions for defendant.

Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* was in giving binding instructions for defendant.

*Louis Goodfriend,* for appellant.—A livery-stable keeper who lets a horse for hire for a trip impliedly promises that the horse is a kind and suitable one for the purpose for which he is let, and not vicious, nor in the habit of kicking: Windle v. Jordan, 75 Me. 149; Horne v. Meakin, 115 Mass. 326; Kissam v. Jones, 56 Hun (N. Y.), 432; Payne v. Halstead, 44 Ill. App. 97; Benner, Livery & Co. v. Busson, 58 Ill. App. 17; Siegrist v. Arnot, 86 Mo. 200.

The only reported case in Pennsylvania at all pertinent to the question involved is Miller v. Moyer, 24 Pa. C. C. Rep. 259.

*Edwin M. Abbott,* for appellee.—The plaintiff must prove the scienter, i. e., that the defendant had knowledge that the horse was dangerous and vicious and unsuitable for the bailment purpose: Horne v. Meakin, 115 Mass. 326; Copeland v. Draper, 157 Mass. 558 (32 N. E. Repr. 944); Lynch v. Richardson, 163 Mass. 160 (39 N. E. Repr. 801); Windle v. Jordan, 75 Me. 149; Blanchard v. Weeks, 34 Vt. 589; Bradley v. Myers, 19 Lanc. L. R. 137; McConnell v. Lloyd, 9 Pa. Superior Ct. 25; P. & R. R. R. Co v. Hummell, 44 Pa. 375; P. & R. R. R. Co. v. Spearen, 47 Pa. 300; Cresey v. Railroad Co., 26 Legal Int. 301; Fouhy v. Railroad Co., 17 W. N. C. 177; Ogden v. Railroad Co., 23 W. N. C. 191; Shvagzdys v. Railroad Co., 48 Pitts. L. J. 136.

There is no warranty, express or implied, where a liveryman hires out a horse, that the same is gentle, docile or will not run away: Copeland v. Draper, 157 Mass. 558 (32 N. E. Repr. 944).

Recovery in damages cannot be had where the mere breach of this warranty occurred innocently: Jones v. Ross, 98 Ala. 448 (13 So. Repr. 319); Case v. Stevens, 137 Mass. 551; Bruce v. Fiss, etc., Horse Co., 47 N. Y. App. Div. 273.

OPINION BY MR. JUSTICE MESTREZAT, March 22, 1909:

This is an action of trespass to recover damages for injuries caused by the vicious acts of a horse. The defendant is a livery-stable keeper in the city of Philadelphia, and for several months prior to November 12, 1906, the plaintiff had hired of him a horse to be used for drawing a delivery wagon

about the city.   On the morning of the day mentioned, the plaintiff went to the defendant's stable and obtained a mare to drive in his wagon during the day.   This mare was different from the one which he had previously hired and used in his business, the defendant having purchased her that morning. The plaintiff testified that the defendant knew the purpose for which the mare was hired, that he recommended her very highly and that she was safe and suitable for the purpose; and that he had purchased her especially for the plaintiff's use. The plaintiff was familiar with and had been driving horses for twenty-five years.

The mare was harnessed to a light wagon and the plaintiff started on his drive about the city.   Within half an hour after the animal was hired she suddenly, without any apparent cause, started to kick violently and finally ran off.   She kicked the dashboard off, hit plaintiff above the eye, and kicked the seat from under the plaintiff.   While she was running, the wagon violently struck a truck standing on the street, broke the front axle at the hub and threw the plaintiff out.   He was knocked unconscious and was severely injured.

This action was brought to recover damages for the injuries which the plaintiff sustained.   On the trial of the cause the above facts were made to appear; and witnesses were also called who testified that the conduct of the mare on the occasion of the accident showed that she was not mild, kind and gentle, but was wild and vicious, and that a gentle horse would not act as she did.

These witnesses were owners of horses and knew their habits, traits and dispositions.   The learned judge directed the jury to find a verdict for the defendant on the ground that there was "no evidence that the defendant knew or by the exercise of reasonable care could have known that the mare was unsuitable for use, if in fact she was so."   The plaintiff has taken this appeal.

The relation between a livery-stable keeper and his customer is that of bailor and bailee for hire, and the former assumes the liability which the contract of bailment imposes.   When the bailor lets a horse for hire he impliedly promises or war-

rants that the animal is fit and suitable for the purpose for which it is hired; he warrants that the horse is not unruly or vicious but is safe, manageable and suitable for the use for which the customer has hired it. It is the duty of a livery-stable keeper to inform himself of the habits and disposition of the horses which he keeps in his stable for hire, and if he knows that they are dangerous and unsuitable or by the exercise of reasonable care could ascertain the fact he is liable for any injuries to his customers resulting from their vicious propensities. The law will not permit him to close his eyes and his ears, thereby remaining ignorant of the vicious habits of his horses, and relieve him from liability for injuries to a customer resulting from such habits. In his contract of hiring he impliedly engages that he knows or has exercised reasonable care to ascertain the habits of his horses, and says to his customer that the horse which he lets is safe and suitable for the purpose for which he has hired it. His warranty is against defects or vicious habits which he knows or by the exercise of proper care could know, and if he fails to exercise such care and it occasions injury to his customer, he will not be relieved of liability though he did not actually know the horse was unsuitable for the service. It is true a liveryman is not an insurer of the suitableness of a horse or carriage let to a customer, but he is bound to exercise the care of a reasonably prudent man to furnish a horse or carriage that is fit and suitable for the purpose contemplated in the hiring. The customer is at his mercy and must rely upon the liveryman to guard him against the danger of a vicious animal or defective vehicle; and hence he has the right to demand of the liveryman that he will use such care in supplying a horse or carriage as a reasonably prudent man exercises in the conduct of his own business affairs. While this court has not passed upon the question, the doctrine here announced is recognized and applied in other jurisdictions: 25 Cyclopedia of Law and Procedure, 1513; 19 Am. and Eng. Ency. of Law (2d ed.), 432; Edwards on Bailments, sec. 373; Fowler v. Lock, L. R. 7 C. P. 272; 10 C. P. 90; Horne v. Meakin, 115 Mass. 326; Lynch v. Richardson (Mass.), 47 Am. St. Rep. 444; Windle v. Jordan,

75 Me. 149; Stanley v. Steele (Conn.), 69 L. R. A. 561; Nisbet v. Wells (Ky.), 76 S. W. Repr. 120. In Lynch v. Richardson, Mr. Justice KNOWLTON, delivering the opinion, said: "It was the duty of the defendant to furnish a horse that had no such vicious habit, and if he knew of the existence of the habit, or if, by the exercise of reasonable care to ascertain whether the horse was suitable for the use of hirers, he ought to have known that it was dangerous, he is liable for such injuries as resulted from his wrongful conduct. . . . It was the duty of the defendant to try to inform himself in regard to the habits of horses kept in his stable for use in his business. It does not require a very long acquaintance with a horse to enable an ordinary livery-stable keeper to form a correct opinion of his qualities. Usually he tries to ascertain as much as possible about it before becoming its owner."

In the case at bar, therefore, the questions were whether the mare was vicious and unsuitable for the purpose for which she was hired, and whether the defendant knew or by the exercise of reasonable care should have known the fact. The burden of establishing both propositions was on the plaintiff. He assumed the burden and introduced evidence to show the vicious conduct of the mare at the time she became unmanageable and injured the plaintiff. In addition to this, witnesses were called whose familiarity with horses, their dispositions and habits, gave their testimony weight, and they testified that the actions of the mare on that occasion showed that she was not gentle or kindly disposed, but was wild and unmanageable. We think the evidence, if believed by the jury, was sufficient to show a breach of the defendant's implied warranty that the mare was fit and suitable for the service for which she was hired, and that the defendant was negligent in not furnishing the plaintiff a gentle and suitable animal. Such evidence having been introduced by the plaintiff, the burden was then imposed upon the defendant of satisfying the jury that the animal was not vicious or unruly or that he was ignorant of the vicious character of the animal and had exercised proper care to inform himself as to its habits. The defendant may also show as a defense, that the conduct of the animal was

occasioned by the hirer, or by the happening of an event that would cause such conduct by a gentle or well-trained horse and one not addicted to a vicious habit, or that the hirer knew or was informed of the habits of the horse and he assumed the risk, or any other matter which would relieve the liveryman from the alleged negligence or breach of implied warranty. It is imposing no heavy burden upon the keeper of a livery stable to require him to investigate the character of the horses he keeps in his stable before hiring them to persons whose safety may be endangered by their vicious habits. If he cannot get any information in regard to their habits, he can at least satisfy a jury on a trial where the conduct of an animal shows a vicious propensity that he made diligent efforts to do so.

It has been suggested that the plaintiff's statement sets forth a special warranty and that, therefore, he cannot recover upon the implied warranty which arises from the contract of hiring. This position is not tenable. The statement is amply sufficient to show the contract of hiring out of which an implied warranty arises, and if in addition to such warranty the statement contains an averment of a special warranty it will not prevent the plaintiff, if the evidence is sufficient, from recovering upon the implied warranty: Windle v. Jordan, 75 Me. 149. In that case it was contended that the plaintiff was confined to a special warranty, but the court said: "It is true that the plaintiff and his witness to the contract of hiring, testify that both the defendant and his hostler recommended and warranted the horse, except in the matter of laziness, but that testimony was not essential to the plaintiff's case. When it was proved and admitted that the defendant was a livery-stable keeper and that he let the horse for hire to the plaintiff for the trip, the law settles the contract upon the breach of which the plaintiff counts."

The learned trial judge evidently thought that this case belonged to that class of cases in which it is held that before a person who has been injured by a vicious animal can recover against the owner he must show that the owner knew of the animal's vicious propensities. This was a misapprehension of the law. The owner of a vicious dog who bites another is re-

sponsible only on proof of the scienter. There, there is no contract relation between the parties and liability is not based upon such relation. In cases of the character under consideration, the liability of the owner of the livery-stable keeper rests on contract, and an implied warranty that the animal hired to the customer is free from defects and infirmities making it unsuitable for the purpose for which it was hired. The breach of this contract, by failing to exercise reasonable care and diligence in furnishing a suitable animal, imposes a liability upon the liveryman.

The statement in this case sufficiently avers a breach of an implied warranty on the part of the livery-stable keeper of the suitableness of the animal let to the plaintiff. It also avers facts sufficient to show negligence on the part of the defendant in that he did not exercise proper care in ascertaining the vicious nature of the animal, a fact which could have been known to the defendant had he used the diligence and care required of him. There was no demurrer to the statement. The courts, however, have, in this class of cases, permitted the plaintiff to enforce his right to damages by an action for a breach of the implied warranty or by an action in tort for negligence. The question was distinctly ruled in Hyman v. Nye, L. R. 6 Q. B. Div. 685. In that case LINDLEY, J., said (p. 689): "It was objected on the part of the defendant that the plaintiff had in his statement of claim based his case on negligence on the part of the defendant, and not on any breach of warranty express or implied. . . . But the absence of such care as a person is by law bound to take is negligence; and whether the plaintiff sues the defendant in tort for negligence in not having supplied such a fit and proper carriage as he ought to have supplied, or whether the plaintiff sues him in contract for the breach of an implied warranty that the carriage was as fit and proper as it ought to have been, appears to me wholly immaterial." None of the cases on the subject, so far as we have seen, give any attention to whether the action was founded upon a technical warranty or upon negligence.

We think the evidence was sufficient to send the case to

the jury, and that the court was in error in directing a verdict for the defendant.

The judgment is reversed with a venire facias de novo.