[Civ. No. 2544.   Fourth Appellate District.—July 23, 1940.]

GEORGE WARWICK, Plaintiff and Appellant, v. LAWRENCE MANEELY, Defendant and Appellant; ARTHUR E. HARRAH et al., Respondents.

Laurence B. Martin, Dearing & Jertberg, Kennett G. Avery, Geo. L. Beckwith and Samuel Reisman for Plaintiff and Appellant.

Rae B. Carter and John D. Chinello for Defendant and Appellant.

Ray W. Hays for Respondents.

BARNARD, P. J.—This is an action for damages arising from an automobile collision in which were involved a car driven by the plaintiff, one driven by the defendant Maneely, and a truck loaded with seven tons of gravel owned by the defendant corporation and driven by the defendant Harrah. The collision occurred about 4:30 P. M. on August 2, 1937, on Highway 99, about six miles north of Fresno. This highway consists of three lanes, each ten feet wide and with broad

shoulders on either side. The highway is straight and level for some miles on both sides of the point in question. The plaintiff was traveling north in the east lane following another car and the truck was coming south in the west lane, while Maneely was following the truck. The accident occurred when the plaintiff and Maneely, in attempting to pass the respective vehicles ahead of them, each entered and tried to use the middle lane about the same time. Maneely had gotten slightly ahead of the truck and his car was moving slightly at an angle, into the west lane when his car and the plaintiff's car collided. After this impact Maneely's car continued or was forced farther into the west lane and into the path of the truck, which struck its westerly side and, as plaintiff contends, threw the Maneely car again against the plaintiff's car.

This action was brought against Maneely and against the driver and owner of the truck, and Maneely filed a cross-complaint against the plaintiff. A jury returned a verdict against Maneely on his cross-complaint and in favor of the plaintiff as against all defendants. Thereafter, a judgment notwithstanding the verdict was entered in favor of the driver and owner of the truck. The plaintiff has appealed from the latter judgment and Maneely has appealed from the judgment against him. The last-mentioned appeal will be first considered.

It is first contended on behalf of Maneely that the evidence is insufficient to establish negligence on his part which was a proximate cause of the accident, and that the evidence discloses that the plaintiff was guilty of contributory negligence as a matter of law. There is a sharp conflict between the testimony of these two parties as to which first entered the middle or passing lane and as to which car struck the other. The plaintiff, who gave his age as 70 years, testified that the car ahead of him was going 25 miles per hour; that after observing that the middle lane was clear and seeing the truck in the west lane about 500 or 600 feet north of him he sounded his horn, increased his speed to 30 or 35 miles an hour, moved into the middle lane and attempted to pass the car in front of him; that he traveled 200 feet in the center lane in a straight line, and when his car was about opposite the car he was passing the truck was 250 feet farther north; that he then observed the Maneely car about

25 feet north of the truck and in the west lane; that in "not very many seconds" the Maneely car swerved out from behind the truck and into the center lane; that the Maneely car "bore down on him"; that "there was only one thing I could do; it was too late for me to get out of the center lane"; that he immediately applied his brakes and stopped within 12 feet; that when he applied his brakes the Maneely car was about abreast of the truck and less than 100 feet away and his own car was about opposite the car he was passing; that he saw that he could not get by the moment he saw the Maneely car come from behind the truck; that just after Maneely had passed the truck "he attempted to get ahead of the truck, and in doing so he struck my car slightly on the bias"; that at that time Maneely's car was "cutting at an angle back into the west lane"; that there was no contact between the Maneely car and the truck until after the Maneely car hit his car; and that Maneely's car stopped within a few feet after the collision.

Maneely testified that he was traveling south behind the truck; that he first saw the plaintiff's car and the one in front of it when they were from 150 to 175 feet away; that the plaintiff's car was about 50 or 75 feet from him when he started to pass the truck; that as he was passing the truck there was nothing to give him any concern; that before he knew whether or not he was sufficiently clear of the truck to permit him to return to the west lane, and as he had just started to ease his car over to the right, he saw the plaintiff's car cutting across the center lane; that the plaintiff's car suddenly shot out toward him; that the front of plaintiff's car hit the left front side of his car and pushed his car "right into the path of the gravel truck"; and that later there was a contact between his car and the truck.

Harrah testified that his truck was traveling south in the middle of the west lane; that Maneely's car was practically alongside him when he first saw it; that he then noticed the two cars coming north, the first car being about 100 feet away and the plaintiff's car about 150 feet; that he then slackened his speed slightly and turned a little to the right; that just as he noticed the two cars coming from the south the plaintiff's car turned into the center lane; that this made him think there was going to be an accident; that the plaintiff's car hit Maneely's car as that car was pulling back into the west

lane; that he would say the Maneely car was 30 feet ahead of his truck when the crash occurred; that plaintiff's car came straight across the center lane at an angle; that after the plaintiff's car hit Maneely's car the front and rear tires of his truck struck the fenders of the Maneely car; that he pulled off the pavement to the right and stopped in 75 feet; and that, regardless of the exact distances or the respective speeds of the other two cars, they were so close together when the plaintiff pulled into the center lane that he thought neither one of them could be turned quickly enough to avoid a crash.

It is apparent that each of these drivers attempted to use the center lane as a passing lane at about the same time. While each driver claims to have been the first to enter that lane it is equally apparent that neither of them had any clear or accurate idea of the speeds and distances which might have a bearing on the accident in so far as their cars are concerned. All parties are agreed that the gravel truck was traveling at 25 miles per hour, but the plaintiff and Maneely each charge the other with a speed much greater than his own. Each made conflicting statements as to the respective distances and the relative position of certain cars at various stages of their testimony. For example, the plaintiff at different times stated that the front of his car at the farthest point got a few feet ahead of the car he was passing, that it got just even with the front end of that car, and that it got only to the middle of that car. Each gave estimates of speed and distances which are impossible. For instance, if the plaintiff's testimony were to be accepted at face value the Maneely car was 150 feet beyond the point of impact at the time the collision occurred. A similar result is obtained by taking Maneely's testimony in these respects. Obviously, the testimony of each with regard to respective distances between the several cars at critical times just prior to the accident is unreliable and amounts to little more than guesses or conjectures.

Under such circumstances, certain physical facts sometimes assume great importance. (*Keyes* v. *Hawley*, 100 Cal. App. 53 [279 Pac. 674]; *Waizman* v. *Black*, 101 Cal. App. 610 [281 Pac. 1087]; *Tracy* v. *Guibbini*, 20 Cal. App. (2d) 216 [66 Pac. (2d) 675].) Photographs which were taken of these cars and of the highway, before the cars were moved, were

introduced in evidence. From these photographs, as well as from the testimony, it appears that the damage to the plaintiff's car covered the entire front thereof while the damage to the Maneely car is mainly on its left front side, extending from the front door forward. The front and rear fenders on the right side of the Maneely car were also bent in toward the car, apparently as a result of the collision between that car and the truck. While the condition in which these cars were left is not conclusive as to which driver was at fault, for reasons which have frequently been pointed out in other cases, it is quite suggestive in this instance. The photographs, as well as the testimony, disclose that after the collision the plaintiff's car was standing across the highway, facing west, covering most of the center lane but with its front wheels on the west lane. The Maneely car was almost in front of it but a few feet south, headed in a southwesterly direction, with its rear end on the pavement and its front end on the shoulder to the west of the pavement.

An engineer, who went to the scene about an hour after the accident, made a map of this portion of the highway showing certain skid marks which he observed on the pavement, which map was introduced in evidence. He testified that he observed skid marks 52.8 feet in length, running along the westerly part of the east lane and then at an angle across the middle lane to a point near the west edge of that lane, from which point there were a number of other marks on the pavement extending toward the southwest. A state traffic officer, who arrived at the scene fifteen minutes after the accident and before the cars had been moved, testified that he then observed skid marks extending from the east lane toward the west and into the center lane of the highway, and oil spots and marks which were around the point of impact. He testified that these were skid marks made by the car which had been going north and that, as he remembered it, these marks were approximately 15 feet long. He remembered seeing no marks showing the application of brakes on cars that were going south. With respect to a conversation he had with the plaintiff at the scene of the accident, this officer testified that the plaintiff told him that he saw the other car coming from the opposite direction but thought he had time to get by.

One or two hundred feet is a short space on a highway when two cars are approaching each other at fair rates of speed. It is obvious that this whole incident occurred within one or two seconds. While there is a conflict in the testimony of these parties as to which first entered the passing lane, their estimates of distances, speeds and the relative positions of the various cars are obviously unreliable, which is rather natural under the circumstances. Not only is the plaintiff's testimony unsatisfactory for this reason and because he frequently changed it in important particulars, but it cannot be reconciled with the tire marks left on the pavement by his car, which began in the east lane and ran at an angle across the middle lane to the point of impact. The evidence of the existence of these marks immediately after the accident stands without contradiction. . Whatever the length of those marks, the officer and the engineer agreed that they came from the east lane and crossed the middle lane. It was impossible for the plaintiff to have been traveling within the center lane, and opposite the car he said he was passing, when these marks were made. This undisputed physical fact comes close to demonstrating that the plaintiff's expressed conclusion that he entered the middle lane first was "merely an erroneous guess". (*Waizman* v. *Black, supra.*) Moreover, the plaintiff told the officer that he saw the other car coming but thought he "had time to get back in".

If we assume that portions of the plaintiff's evidence are sufficient to raise a conflict on the issue as to his contributory negligence it cannot be questioned that, in so far as it is disclosed by the written record, the evidence largely preponderates in favor of the defendant. It hardly seems possible that the jury could have found for the plaintiff unless it was prejudiced in some manner or was misled by the instructions. Under such circumstances, the other matters raised become very important.

The defendant Maneely contends that one of plaintiff's counsel was guilty of misconduct which must have had a prejudicial effect upon the jury. While this counsel was examining Maneely under section 2055, Code of Civil Procedure, he suspended his interrogation and called Maneely's daughter to the stand. He first asked her if she had heard the court's instruction to leave the courtroom and remain outside. He then started a question "Isn't it a fact Miss

Maneely . . . '' when the court interrupted to say that he wanted any such matter taken up outside of the hearing of the jury. In spite of this and several attempts of the court to prevent him from then going into the matter counsel persisted and stated in the presence of the jury ''I have certain evidence indicative of the fact that Miss Maneely was listening at the door during the testimony yesterday afternoon,'' and ''I intend to show precisely what took place.'' The court had excluded the witnesses, but Miss Maneely was never called as a witness.

This conduct of counsel was unjustified and improper. There can be little question that he was sufficiently intelligent and experienced to know how to correct the situation he claimed to have existed, if any correction was necessary. The fact that he brought the matter up in the way he did and at the time he did indicates that he had a wrongful purpose in mind. Whether or not this be true, the circumstance was one well calculated to prejudice the jury against this defendant. It is rather significant that in this connection it is argued in plaintiff's brief that ''it is also very much in point to observe that as a matter of fact, Miss Maneely was listening at the door and that there was absolutely no showing or indication to disprove this as an admitted fact''. When a trained legal mind considers this fact very much in point, and as justifying certain inferences, it is hardly reasonable to suppose that the improper disclosure of that matter to the jurors did not have a similar effect upon them. (*Deibler* v. *Wright*, 119 Cal. App. 277 [6 Pac. (2d) 344]; *Keena* v. *United Railroads*, 197 Cal. 148 [239 Pac. 1061].) Whether or not this circumstance was sufficient, in itself, to require a reversal it was entirely inexcusable and adds a further unsatisfactory element to the record in this case.

Complaint is also made of the giving of certain instructions. It is first contended that the court erred in giving, at the request of the plaintiff, an instruction on the doctrine of last clear chance in which, after enumerating six conditions, the jury was told that if it found that these conditions existed it must find against the defense of contributory negligence, because under such conditions the law holds the defendant liable despite any negligence on the part of the plaintiff. We think this instruction should not have been given under the circumstances shown by the evi-

dence. The skid marks of the appellant's car, running from the east lane across the middle lane to the point of impact, constitute the strongest evidence in the case and indicate that Maneely had no chance whatever to avoid the collision. The uncontradicted evidence is that at the time of the collision the Maneely car was angling into the west lane. Even the plaintiff testified to that fact. The vehicles were so close together that before Maneely could get out of the way the gravel truck struck his car. Moreover, if for present purposes we accept the testimony given on behalf of plaintiff, Maneely suddenly swung out from behind the truck when he was so close that the plaintiff could not do anything except try to stop his car. He said that Maneely's car was so close when it first appeared from behind the truck that it was impossible for him to drop behind the car which was preceding him in the east lane, although he finally settled down to and firmly insisted upon the claim that when Maneely's car appeared the front end of his car was opposite the middle of the car he was passing. The car ahead of him was going almost as fast as he was, and if he was unable to drop back some six feet the time was very short and the Maneely car was very close. It further appears that as soon as Maneely saw that the plaintiff's car was in the center lane he pulled over and tried to get into the west lane, and his car was hit by the truck even then. There is no satisfactory evidence to show that Maneely should have seen the plaintiff's car earlier than he did, but if such a fact be conceded it is all the more certain that he would have been hit by the truck if he had turned into its path at an earlier instant. Both the plaintiff and Maneely asked for sudden peril instructions worded in favor of each, respectively, and both were given. This is one of those situations from which, when it is once brought about, neither party has much of a chance to escape. The language used in *Bagwill* v. *Pacific Elec. Ry. Co.,* 90 Cal. App. 114 [265 Pac. 517], is applicable here: "Certainly the doctrine of last clear chance never meant a splitting of seconds when emergencies arise. . . . We are not to tear down the facts of a case and rebuild the same so that, by a trimming down and tight-fitting operation, something can be constructed upon which may be fastened the claim of last clear chance. The words mean exactly as they indicate, namely, last *clear* chance, not possible chance."

▉ At the request of the plaintiff the court gave two other instructions, which are erroneous. In the first of these the jurors were told that in the event they found the plaintiff was not negligent, if they found that the negligence, if any, of Harrah contributed in any degree, no matter how slight, to plaintiff's injury their verdict "should be for the plaintiff and against the defendants". While thus authorizing a verdict against all defendants under these conditions the matter of negligence on the part of Maneely was entirely omitted from the instruction. This instruction was immediately followed by another instruction, which reads:

"You are instructed that the defense of contributory negligence is a defense to be affirmatively established by the defendants by a fair preponderance of all the evidence in the case, unless such negligence is shown or can be inferred from the evidence adduced in support of the plaintiff's case, and in the event defendants do not so establish the defense of contributory negligence, your verdict should be for the plaintiff."

Again, this instruction entirely omits the matter of negligence on the part of the defendants, although it purports to state and clearly states the conditions under which a verdict should be returned for the plaintiff.

The general rule in this regard is thus set forth in *Douglas* v. *Southern Pac. Co.*, 203 Cal. 390 [264 Pac. 237] :

"The authorities are legion to the effect that a so-called 'formula' instruction must contain all the elements essential to a recovery, and the absence of any one of such elements may not be compensated for nor cured by a reference thereto in other instructions correctly and fully stating the law. The principle is well stated in *Beyerle* v. *Clift*, 59 Cal. App. 7, 9 [209 Pac. 1015], wherein it is held that 'if an instruction by its terms purports to state the conditions necessary to a verdict, it must state all those conditions and must not overlook pleaded defenses on which substantial evidence has been introduced. "It is clear that an instruction directing a verdict for the plaintiff in the event that the jury finds certain facts to be true, must embrace all the things necessary to show the legal liability of the defendant and to warrant the direction or conclusion contained therein that plaintiff is entitled to a verdict, and such is the rule in this state." . . . The court gave other instructions on the subject of contributory

negligence, the correctness of which is not challenged. But this is not sufficient to overcome the prejudicial character of the erroneous instructions.' ''

That rule is reaffirmed in *Mecchi* v. *Lyon Van & Storage Co.*, 38 Cal. App. (2d) 674 [104 Pac. (2d) 26]. The giving of such an instruction was held prejudicial in *Kalash* v. *Los Angeles Ladder Co.*, 1 Cal. (2d) 229 [34 Pac. (2d) 481] and *LaRue* v. *Powell*, 5 Cal. App. (2d) 439 [42 Pac. (2d) 1063].

It is true that this rule has not been strictly applied in some cases where the instruction in question did not purport to be a complete statement of the law upon which a recovery could be based or where it appeared from the context that the jury could not have been misled. (See *Douglas* v. *Southern Pac. Co., supra.*) In fact, the basic question in such a case is whether or not the jury may have been misled by the instruction. A large number of instructions were here given, some of which are very lengthy. The one in question is short and concise and one which might easily attract the attention of, and be remembered by, the jury. Without qualification, the jurors were told that unless the defendants affirmatively established their defense of contributory negligence the verdict should be for the plaintiff. The instruction was express and not general, and a verdict for the plaintiff was directed upon one condition. The omission of the element of negligence on the part of the defendant may well have misled the jury in such a case as this, where the evidence preponderates in favor of the defendant and where, so far as the record is concerned, it is difficult to see how the jury could reasonably have found for the plaintiff under the evidence. Under such circumstances, it cannot be held that the omission was not prejudicial and we are far from convinced that a miscarriage of justice has not occurred.

At the request of the plaintiff, the court further instructed the jury as follows:

"I instruct you that the presumption is that all men are ordinarily careful in the matter of protecting themselves against possible injury to their persons. Such presumption, of course, may be overcome by the evidence, but in the absence of evidence to the contrary, you are entitled to consider said presumption along with all of the other evidence in the case in determining whether or not the plaintiff con-

ducted himself as a man of ordinary prudence, under the same or similar circumstances.''

It has frequently been held that this instruction should not be given where the party is alive and the facts are fully developed in the evidence. In a number of cases, however, it has been held not sufficiently prejudicial, under the circumstances, to justify a reversal. It was so held in *Rogers* v. *Interstate Transit Co.*, 212 Cal. 36 [297 Pac. 884]. In that case the instruction merely stated the presumption and the court pointed out that the evidence in behalf of the plaintiff was beyond question and said it could not be assumed that the jury placed any great reliance on any such presumption even though told that they might do so. In *Tuttle* v. *Crawford*, 8 Cal. (2d) 126 [63 Pac. (2d) 1128], such an instruction was held not prejudicial although there was a dissenting opinion. In that case the facts were practically uncontradicted and the court pointed out that in the instruction there given the jury was not told that this presumption might stand as evidence unless contradicted, and that no instructions were given with respect to the force or effect of such a presumption. In *Paulsen* v. *McDuffie*, 4 Cal. (2d) 111 [47 Pac. (2d) 709], a case in which contributory negligence was not a defense, such an instruction was given which included the statement that this presumption should be considered as evidence unless it was rebutted by other evidence. While is was held that the instruction was improper but not prejudicial, the court said: ''Had this been a case where the contributory negligence of the plaintiff would have defeated his claim for damages, the consequences following the giving of that instruction might have been most serious, and possibly might have required a reversal of the judgment.'' The instruction here in question went farther than any of the instructions in the cases referred to and the jury was told that this presumption was to be considered as evidence and was, in effect, told that it might even be determinative upon the question of the plaintiff's negligence. Under the circumstances of this case its effect upon the jury may have been considerable. Whether or not it would be sufficient, standing alone, to justify a reversal, this instruction furnishes an added reason why the judgment against this defendant should be reversed.

The appeal taken by the plaintiff from the judgment notwithstanding the verdict entered in favor of the defendants Harrah and Stewart & Nuss, Inc., deserves little consideration. The general facts heretofore set forth and a part of what has already been said is also applicable to this appeal. It appears without contradiction that the truck owned and driven by these defendants was proceeding southerly on the west lane of this highway at a speed of 25 miles an hour. The accident happened as a result of the actions of one or both of the drivers of the other two cars, who were both attempting to use the passing lane at the same time.

It appears from the uncontradicted evidence that the collision between the other two cars had occurred before the truck in any way came in contact with the right side of the Maneely car. The plaintiff contends, however, that after that crash occurred a second one followed in which the truck struck the Maneely car, which had turned into the path of the truck, throwing that car again against the plaintiff's car, causing additional damage.

Negligence is ascribed to these defendants in only one or two particulars. The plaintiff, his wife and daughter, all testified that they saw the truck when they were 500 or 600 feet away, that it was proceeding south in the west lane but that its left rear tires were close to or upon or straddling the white line which separated the west lane from the middle or passing lane, and that the course of the truck was not changed prior to the collision. It is contended that to drive the truck near the inner edge of the west lane was negligence and, further, that negligence appears because Harrah testified that he saw that a collision between the other two cars was inevitable, it being argued that although he saw this he did not turn to his right and off the pavement as soon as he should have done. In this connection, in addition to his testimony previously referred to, Harrah testified that he thought prior to the crash that a collision was inevitable, that the sudden turning of the plaintiff's car from the east lane out into the center lane was what made him think there would be a crash, that this occurred just as the Maneely car was passing his left front wheel, and that at the moment he thought there would be an accident he immediately pulled his car to the right, going off the pavement and off the shoulder and stopping 75 feet beyond the point of impact. There is

ample evidence that the truck was not running close to the white line. However, if we assume that it was and that this was a negligent act there is nothing whatever to show that such act had any causal connection with the accident or was a proximate cause thereof. The middle lane was 10 feet wide and all parties agree that the Maneely car had completely passed the truck before the accident occurred and that the truck did not touch the Maneely car until that car had turned or been knocked over into the west lane into the path of the truck. The evidence shows that the rear wheels of the truck constituted the widest part of the truck, that is the truck body did not overhang the wheels. Even when the Maneely car turned partially into the west lane in the path of the truck the truck was over far enough so that it only dented the fenders on the right side of the Maneely car. The truck was proceeding south in the west lane and there is evidence that near the scene of the accident a sign had been erected warning truck drivers to stay on the pavement. The truck driver had no reason to anticipate that the drivers of the other two cars would attempt to use the passing lane at the same time and the evidence shows that as soon as he realized the situation he attempted to turn to his right and that he almost avoided contact with the Maneely car, although that car moved or was pushed into the west lane and into the path of the truck. After reading the evidence we are unable to see how a judgment against these defendants could be upheld and the action of the trial court in ordering a judgment notwithstanding the verdict, as far as they are concerned, was proper.

For the reasons given, the judgment in favor of the plaintiff is reversed and the judgment notwithstanding the verdict in favor of the defendants Harrah and Stewart & Nuss, Inc., is affirmed.

Marks, J., and Griffin, J., concurred.

A petition by plaintiff and appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court September 19, 1940.