[Civ. No. 20436.   Second Dist., Div. Three.   Apr. 26, 1955.]

ALICE M. ESTES, Appellant, v. HARRY M. SMITH et al., Respondents.

Eleanor V. Jackson for Appellant.

Spray, Gould & Bowers and Robert E. Ford for Respondents.

WOOD (Parker), J.—Action for damages for personal injuries sustained when plaintiff was thrown from a horse which she had rented from El Rancho Stables, a riding academy that was owned by defendant Saunders and operated by defendant Smith.

The complaint alleged two causes of action. The first cause of action was based upon the alleged negligence of defendants in renting a horse to plaintiff which was not suitable for her to ride. The second cause of action was based upon the alleged breach of an implied warranty of fitness of the horse for the purpose for which it was rented. Defendants, in their answers, denied the allegations of negligence and breach of warranty, and as affirmative defenses they alleged that plaintiff was contributively negligent and that she assumed the risk "attendant" in horseback riding. At the beginning of the trial the court granted defendants' motion to file an amendment to their answers for the purpose of setting forth a purported release, signed by plaintiff, which allegedly released defendants from liability in the event of an accident. The court stated that the amendment should be in writing. It does not appear, however, from the record herein that such an amendment was filed. Trial was by jury and the verdict was for defendants. Plaintiff appeals from the judgment.

Appellant contends that the jury was not instructed properly.

Evidence on behalf of appellant was in substance as follows: About 8 a.m. on October 19, 1952, appellant and Mr. Frazier went to the El Rancho Stables, and Mr. Frazier asked defendant Smith for a certain horse which he had ridden on a previous occasion. He then told Smith that appellant was not an experienced rider, and he asked him to give her a horse

that she could handle. Appellant, who had rented a horse from the stables on a previous occasion, told Smith that she did not want the horse she had ridden previously because it was very difficult for her to handle. Smith then selected a horse named "Bull Dog," and said that it was "a good horse" and would give appellant a good ride if she would think for it. Appellant and Mr. Frazier signed a sheet of paper which was referred to as a "register." The sheet was attached to a board by means of a clamp which was at the top of the board. About 1½ inches below the top of the sheet there were printed words as follows: "I, the undersigned assume all responsibility for horse and equipment, and all liability. It is understood that the management is not liable in case of accident. I also agree to pay for damage to horse or equipment and special charge for overridden horse." Appellant testified that she did not see the printing on the paper, that it was not called to her attention, that the clamp or the paper was at an angle and the printing "was obscured." After appellant and Frazier left the stable, they rode along a trail which extended through a canyon to picnic grounds. Appellant took the lead because she was familiar with the surrounding country. As they started through the canyon, appellant began having difficulty controlling her horse. When riders passed her on the trail, the horse "would want to break loose and run." When she "held the horse in" it would snort and throw its head, and it worked up a tremendous sweat. She had great difficulty in directing the horse. When there were divisions in the trail, sometimes the horse would respond to the rein and sometimes it would not. When they were near the picnic grounds they decided to take the horses back to the stable because appellant could not control her horse. As she went around a curve, toward the return trail, her horse suddenly "broke loose," spun around, got between two trees which were about five feet from the path, and threw appellant into the trunk of a tree. Appellant's head struck the tree, and the next thing she remembered was that she was on the ground and covered with blood. The horse was about 25 feet away. Frazier told appellant that the only way they could get help would be for her to get on her horse and for them to return to the stables. They got on their horses, and Frazier rode in front in order to keep appellant's horse from breaking away, and they returned to the stables.

There was further evidence on behalf of plaintiff that on

October 6, 1952, Norman Green, who was 17 years of age and had been riding horses about seven years, went to the El Rancho Stables and rented Bull Dog from Smith. Smith told Norman that Bull Dog was "plenty horse and hard to ride." On that occasion the horse would not go across a bridge and someone from the stables led it across. It "wanted" to turn around, wanted to run, and was hard to hold back, and kicked at a horse. When Norman was returning to the stables the horse tried to throw him and then it ran into some "bamboo weeds." When Norman got the horse back to the stables he told Smith what had occurred and Smith stated that Bull Dog would not do that—he was a nice horse. Norman testified that he had rented horses from the El Rancho Stables about five times; that he signed a registration sheet each time but he had never seen the top part of it. When he signed the register on October 6, the top part of the sheet (referring to alleged release) was "either turned over or the clamp was there, or something was on it."

Evidence on behalf of defendants was in substance as follows: El Rancho Stables acquired Bull Dog in August, 1952. Prior to that time Bull Dog was owned by another stable and he was ridden by children of all ages. Defendant Smith, who then taught riding at that stable, used the horse in teaching classes of children—in one class there were 48 children ranging from 5 to 9 years of age. Bull Dog was also rented at said stable for trail riding, and no one complained that he was vicious or mean. Smith rode the horse about 40 times before it was sold to El Rancho, and during those rides the horse displayed no bad habits. After El Rancho acquired the horse, Smith received complaints from some riders that they did not like to ride him because he was a "poor ride." Smith did not remember any complaints to the effect that Bull Dog was an ill-mannered horse and he did not remember any conversation with Norman concerning Bull Dog. On September 9, 1952, a girl 14 years of age, rode Bull Dog. She testified that he was not "real gentle" but that she had no trouble with him and he was easy to rein. Smith testified that he did not know whether something obscured the printing at the top of the register when appellant signed it; he did not tell appellant that she would have to think for Bull Dog; when appellant and Frazier returned the horses to the stable both horses were sweating; appellant returned to the stables about two minutes after Frazier re-

turned; Smith saw her approach the stables and at that time the horse was walking.

The court instructed the jury to the effect that if it found that defendants were negligent and their negligence was a proximate cause of injury to plaintiff, the plaintiff was entitled to a verdict unless she was guilty of negligence proximately contributing to the injury. It also gave an instruction that in a contract for hiring a horse for riding purposes there is an implied warranty that the horse is safe and suitable for the purpose for which it is hired, and the owner is liable for a breach of the warranty. It also gave an instruction to the effect that if injury is done by a vicious or dangerous animal, known to be vicious or dangerous by its owner, the owner is liable unless the injured person knowingly and voluntarily brought the injury upon herself; and that this principle does not require a finding that the owner was negligent.

Appellant contends that the court erred in refusing to instruct the jury that there were three separate theories of recovery on any or all of which a verdict could be based, which theories were as follows: (1) negligence of defendants in renting a horse to plaintiff which was not suitable for her; (2) breach of implied warranty of fitness of the horse for the purpose for which it was rented; and (3) liability on the ground that the horse was vicious and such fact was known to defendants. She concedes that the court gave proper instructions as to each of those theories, but she asserts the court erred in failing to instruct the jury that the theories were alternative theories, upon any or all of which a verdict could be based. Appellant requested an instruction which was to the effect that there were three theories of liability, those above mentioned, and that appellant might recover on any one or all of them. ■ She argues that, in view of the failure to give such an instruction, it was prejudicial error to give the following instruction: "In order for the plaintiff to recover against the defendants, the owner of the horse, Bulldog, she must prove by a preponderance of the evidence that the horse was a mean or vicious or untrustworthy animal and that defendants had knowledge or in the exercise of reasonable care should have had knowledge of such vices. If you do not find such to be true, from a preponderance of the evidence, it is your duty to return a verdict in favor of the defendants." Appellant argues that said instruction "cancelled" the instructions which were

given on the theory of negligence and breach of warranty; that it stated in effect that the only theory upon which plaintiff could recover was that the horse was vicious or untrustworthy, and if the jury found that the horse was not vicious or untrustworthy the verdict must be for defendants. That instruction purported to state certain conditions or circumstances which were necessary in order for plaintiff to recover damages. It is the kind of instruction that is sometimes referred to as a formula instruction. In *Douglas* v. *Southern Pac. Co.*, 203 Cal. 390 [264 P. 237], it was said (p. 393): "The authorities are legion to the effect that a so-called 'formula' instruction must contain all the elements essential to a recovery. . . ." In *Mazzotta* v. *Los Angeles Ry. Corp.*, 25 Cal.2d 165 [153 P.2d 338], it was said (pages 169-170) that a certain instruction therein required the jury, under certain stated circumstances, to return a verdict for appellant, and that it "therefore includes a formula and may be justified only if it contains all of the elements essential to a recovery [citations], and the absence of any one of the necessary elements may not be compensated for or cured by the fact that other instructions state the omitted factors required to sustain the verdict directed." The said instruction, in the present case, did not include any reference to the other two theories upon which plaintiff sought damages, namely, negligence and implied warranty. It is true that there were instructions regarding those other two theories, but there was no instruction that the three theories were alternative theories and that she could recover upon any one or all of those theories. The said instruction was not a complete statement of the law upon which a verdict in favor of plaintiff might be based under the different theories of the case. By that instruction the jury was told that plaintiff could not recover damages unless she proved by a preponderance of the evidence that the horse was mean or vicious or untrustworthy, and that the defendants knew or should have known that the horse had such habits; and that unless plaintiff made such proof the verdict must be for defendants. As stated in *Warwick* v. *Maneely*, 40 Cal.App.2d 235 [104 P.2d 831], at page 245, "[T]he basic question in such a case is whether or not the jury may have been misled by the instruction." It was also said in that case (p. 245): "A large number of instructions were here given, some of which are very lengthy. The one in question is short and concise and one which might easily attract the attention of, and be

remembered by, the jury. Without qualification, the jurors were told that unless the defendants affirmatively established their defense of contributory negligence the verdict should be for the plaintiff. The instruction was express and not general, and a verdict for the plaintiff was directed upon one condition.'' In the present case there were 48 instructions. The instruction as to the issues to be determined with respect to negligence was long, complex, and difficult to understand. Four issues were referred to therein, namely, whether defendants were negligent, whether negligence of defendants was a proximate cause of injury, whether plaintiff was negligent, and whether negligence of plaintiff contributed proximately to her injury. After stating each of those issues there was a direction as to how the jury should proceed with respect to other issues, depending upon whether the previously referred to issues in that instruction had been answered in the affirmative or negative. As to the first and second issues, the direction was that if the jury answered in the negative the verdict should be for defendants, but if it answered in the affirmative then it should determine another issue. As to the third issue, the direction was that if the jury answered in the negative, after having found in favor of plaintiff on the two prior issues, the verdict should be for plaintiff, but if it answered in the affirmative then it must determine a fourth issue. As to the fourth issue, the direction was that if the jury answered in the affirmative the verdict should be for defendants, but if it answered in the negative and if it had found that negligence of defendants proximately caused the injury, the verdict should be for plaintiff. The so-called formula instruction herein was short and clear. Certainly, in comparison with said instruction on negligence, it could be more easily understood and applied. That instruction (formula) was not qualified so that the jury was advised therein that the other theories, upon which plaintiff sought recovery, must also be considered in determining whether plaintiff was entitled to a verdict. That instruction would tend to cause the jury to believe that plaintiff could not prevail unless the horse was vicious. In this respect it was erroneous. The jury could have found that the defendant agreed to furnish a horse that was gentle and easy to handle and that Bull Dog was not such a horse even though he was not mean or vicious or untrustworthy. It was prejudicial error to give that instruction.

By reason of the above conclusion, it is not necessary to discuss other contentions.

The judgment is reversed.

Shinn, P. J., and Vallée, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied June 23, 1955.