Francis Eugene SWANN and Ellen T. Swann, Appellants,

v.

David W. ASHTON, doing business as "Wells Fargo," and Buckskin Joe, Inc., Appellees.

No. 7304.

United States Court of Appeals Tenth Circuit.

Jan. 11, 1964.

Rehearing Denied Feb. 13, 1964.

Frank G. Stinemeyer, Denver, Colo. (M. Keith Singer, Denver, Colo., on the brief), for appellants.

Robert B. Yegge, of Yegge, Hall & Shulenburg, Denver, Colo., for appellee David W. Ashton.

John Stump Witcher, Canon City, Colo., for appellee Buckskin Joe, Inc.

Before PICKETT, LEWIS and BREITENSTEIN, Circuit Judges.

PICKETT, Circuit Judge.

Francis Swann and Ellen Swann, husband and wife, brought this action to recover damages for personal injuries sustained while riding horses rented from the defendant Ashton. Two alternative causes of action are alleged. The first is based upon allegations of negligence of defendants in connection with the horseback ride, and the second upon breach of warranty, express and implied. This appeal is from a judgment for the defendants following a jury verdict.

During the summer of 1959, defendant Ashton was operating a horseback riding concession under an agreement with the defendant Buckskin Joe, Inc., the owner of a tourist village resort near Canon City, Colorado. The Swanns, while vacationing in Colorado during the month of August, 1959, made arrangements for a horseback ride at Buckskin Joe's and paid the usual fee for a supervised tour on a predetermined trail. There were others in the party in addition to the plaintiffs, and their 11 year old daughter. Each person in the party was assigned a horse to be ridden on the tour, and all except the plaintiff Swann, who remained on the ground for the purpose of taking motion pictures of the horseback riders, mounted and left together with the guide.[1] When the party was 75 to 100 feet away, Swann mounted his horse, which he had been told by the guide was "gentle and tourist trained," and proceeded up the trail.[2] Swann's horse, "Shorty",[3] appeared to be gentle, but after it had traveled about 75 yards at a walk, it suddenly leaped forward and ran toward the other horses. The unexpected movement of the horse unseated Swann and he was seriously injured in the fall. When Swann's horse approached the other horses, the one ridden by Mrs. Swann became unruly, causing some injuries to her. There is no dispute as to the serious injuries to Swann or that the injury to Mrs. Swann was of a minor nature.

The basic issue presented by this appeal is the applicable legal test of liability of the defendants as presented by the court's instructions. The court instructed the jury:

"One who is in the business of renting saddle horses to the public does not insure or guarantee the user of the horses against bodily harm; nor does he insure or guarantee that the horses are safe and suitable for riding. However, he is under a duty to use reasonable care to furnish horses which are not vicious and which do not have dangerous propensities. Therefore, in

[1.] The tour was in charge of a 19 year old girl, with only a few days experience as a guide. She instructed the riders how to manage their horses.

[2.] Swann testified that the guide told him the horses were gentle and "fool-proof."

[3.] Shorty was described as having "a good lively walk", "a good horse", and not a plug.

this case, Ashton is not liable for the plaintiffs' injuries resulting from the actions of the horses, unless he had knowledge, or in the exercise of reasonable care, should have had knowledge that the horses were vicious or had dangerous propensities."

"To recover in this case, the plaintiffs have the burden of proving by a preponderance of the evidence of the following: First, that the horses furnished to plaintiffs were vicious or had dangerous propensities which made them unsafe or unsuitable for riding; secondly, that the defendant Ashton knew, or, in the exercise of reasonable care, should have known that the horses were vicious or had dangerous propensities, and therefore, they were unsafe or unsuitable for riding; thirdly, that the injuries complained of were proximately caused by the vicious or dangerous propensities of the horses."

This is the ordinary test of the liability of an owner for injuries to persons caused by vicious and dangerous domestic animals, such as dogs, when there is no contractual relationship between the parties. 3 C.J.S. Animals § 145; Gabe v. Forbes, 141 Colo. 419, 348 P.2d 377; Swerdfeger v. Krueger, 145 Colo. 180, 358 P.2d 479; Barger v. Jimerson, 130 Colo. 459, 276 P.2d 744. But, in cases of bailment for hire of an animal, we think the limitation of liability of the bailor to the same extent as where the owner maintains a vicious and dangerous animal is too narrow. The terms "vicious" and "dangerous propensities" as used in the instructions, carry a connotation of meanness which is misleading and confusing. Although a bailor for hire would be liable for furnishing horses known to have dangerous or vicious propensities if injury resulted, still, the test in such cases, whether the claim is based upon tort or implied warranty, is one of suitability, and in a proper case an injured person is entitled to have the case submitted to a jury on both theories. While the one in the business of renting horses does not insure the renter against injury, he owes a duty to use reasonable care to furnish an animal which is fit and suitable for the purpose for which it is to be used. 3 C.J.S. Animals § 13; Mateas v. Fred Harvey, 9 Cir., 146 F.2d 989; Fred Harvey Corp. v. Mateas, 9 Cir., 170 F.2d 612; Gober v. Nolan, 81 Ga.App. 16, 57 S.E.2d 700, 15 A.L.R.2d 1309; Conn v. Hunsberger, 224 Pa. 154, 73 A. 324, 25 L.R.A.,N.S., 372; Anno. 15 A.L.R.2d 1313; Anno. 131 A.L.R. 845, 847. He must exercise reasonable care to ascertain the habits and disposition of horses which he keeps for hire. If he knowingly rents a horse which is unsafe or unsuitable for the purpose for which it was hired, he is liable for resulting injuries regardless of the reason for the unsuitability. For instance, a horse might be safe for one person to ride and unsafe for another, it might be safe for a man but not a woman or a child, it might be suitable on certain types of trails and not on others, or a gentle horse might become unsafe under particular conditions. Restatement, Torts § 518g; Estes v. Smith, 132 Cal.App.2d 529, 282 P.2d 534; Koser v. Hornback, 75 Idaho 24, 265 P.2d 988, 44 A.L.R.2d 1015; Dam v. Lake Aliso Riding School, 6 Cal.2d 395, 57 P.2d 1315; Mateas v. Fred Harvey, supra. In determining whether a horse is unsafe or unsuitable for these purposes, the circumstances of each case, including existing and foreseeable conditions which may arise in its use, must be considered. The instruction given specifically told the jury that in determining the suitability of the horses it should consider only their vicious or dangerous propensities. It excluded recovery for any other reason or upon any other theory. We hold this to be prejudicial error.

The Swanns also contend that the court erroneously limited the liability of the defendant to that of furnishing unsuitable horses to ride. The amended complaint alleges that plaintiffs' injuries resulted from the careless and negligent acts of the defendants, their agents and employees. Liability for injuries sus-

tained on a horseback tour could result from negligence other than from the unsuitability of the horse furnished, if the negligence is a proximate cause of the injuries. The Swanns were entitled to the exercise of due and reasonable care in the selection of horses and equipment and the management of the tour for their safety. Evidence tending to establish such negligence as a proximate cause of the injuries is admissible, and the jury should be instructed accordingly. Fortune v. Holmes, 48 Tenn.App. 497, 348 S.W.2d 894; Dee v. Parish, 160 Tex. 171, 327 S.W.2d 449; Kersten v. Young, 52 Cal.App.2d 1, 125 P.2d 501; Cf. Amos v. Remington Arms Co., 117 Colo. 399, 188 P.2d 896.

■ The Swanns objected to the court's instruction fixing the liability of the defendant Buckskin Joe. After defining a joint adventure, the court instructed the jury that the liability of Buckskin Joe depended upon a finding that it was a joint adventure with Ashton in the operation of the horseback riding business. It is urged that Ashton was a concessionaire of Buckskin Joe, which made it liable if reasonable care was not

exercised to secure reasonably safe methods of operation by Ashton, citing Restatement, Torts, § 415. This rule has no application here. Except in a general way, the record does not show the nature of the business of Buckskin Joe, or the relation of Ashton's horseback riding operation to it. So far as this record is concerned, Ashton's business was operated separate and apart from Buckskin Joe. The rental provided for was 20% of the proceeds from Ashton's business. The lease itself created only the relationship of landlord and tenant, but Ashton testified that Buckskin Joe exercised substantial control over the management of the business, as well as Ashton's activities.[4] There was adequate evidence to create an issue of fact as to the existence of a joint venture and the question was properly submitted to the jury.

We have examined other assignments of error relating to the abuse of discretion of the trial court in the conduct of the trial, and find them to be without merit.

The judgment is reversed and the case remanded for a new trial.

---

**4.** In the agreed narrative statement of the testimony of the witnesses, a part of Ashton's testimony is as follows: "He identified the town of Buckskin Joe located eight miles west of Canon City as a tourist attraction and that his association with Buckskin Joe in 1959 was 'I owned the Wells Fargo stage coach line and the saddle horses.' He identified plaintiffs' Exhibit 18 as 'a copy of my concession lease with Buckskin Joe.' He admitted that under the agreement he was required to pay Buckskin Joe 20% of the proceeds; that the lease does not provide who is to furnish the horses or the stagecoach equipment, nor where the horseback tours may be conducted. He was not free to use any part of the premises of Buckskin Joe, but through mutual agreement with Mr. Smith, manager of Buckskin Joe, they would figure out in general directions they were going to go and 'we would go out and scout the trails and pick out as safe a one as possible and as scenic as possible also.' 'We would pick out the best trails there always keeping in mind that the people

that were going to ride these horses were inexperienced and they needed a nice easy trail.' That he did discuss certain things concerning the operation with the management of Buckskin Joe. That he did not do any advertising personally but that Buckskin Joe would have a signboard occasionally 'it might be "Wells Fargo" or "saddle horses" and he was mentioned in their advertising. He identified plaintiffs' Exhibit 19 as the advertisement put out by Buckskin Joe. That there were conversations with management of Buckskin Joe as to the amount of horses to be used in the operation and that Buckskin Joe exercised control over the only entrance gate. That he had no control over that gate.' * * *

"In re-direct examination by Mr. Witcher, counsel for defendant Buckskin Joe, Inc., this defendant admitted that the defendant Buckskin Joe, Inc. did exercise control over him on the quantity of horses used and that Buckskin Joe picked out places for Ashton to take the trail rides." (Reference to record page numbers omitted.)