LESSEE OF SARAH I. JEWELL AND OTHERS, PLAINTIFFS IN ERROR, *v.* BENJAMIN JEWELL AND OTHERS, DEFENDANTS.

The declarations of a deceased member of a family that the parents of it never were married, are admissible in evidence whether his connection with that family was by blood or marriage.

The acts and declarations of the parties being given in evidence on both sides, on the question of marriage, an advertisement announcing their separation and appearing in the principal commercial newspaper of the place of their residence immediately after their separation, is part of the *res gesta,* and admissible in evidence. Whether or not it was inserted by the party, and if it was, what were his motives, are questions of fact for the jury.

If a written contract between the parties be offered in evidence, the purport of which is to show that the parties lived together on another basis than marriage, and the opposite party either denies the authenticity of the paper or alleges that it was obtained by fraud; the question, whether there was a marriage or not, is still open to the jury upon the whole of the evidence.

Upon the two questions, 1st. Whether, "if before any sexual connection between the parties, they, in the presence of her family and friends, agreed to marry, and did afterwards live together as man and wife," it was a legal marriage and the tie indissoluble even by mutual consent; and, 2d. Whether, "if the contract be made *per verba de presenti,* and remains without cohabitation, or if made *per verba de futuro,* and be followed by consummation," it amounts to a valid marriage, which the parties (being competent as to age and consent) cannot dissolve, and is as equally binding as if made in *fácie ecclesiæ;* the court can express no opinion, being equally divided.

THIS case was brought up, by writ of error, from the Circuit Court for the district of South Carolina.

The facts which were not denied were few; nearly all the evidence being of a contradictory character. All this evidence was brought to the notice of this court, in the argument, in consequence of the refusal of the court below to grant the third instruction prayed for by the plaintiffs, which instruction will be stated hereafter.

The admitted facts were these :

About the year 1794 or 1795, Benjamin Jewell became acquainted with Sophie Prevost, a young girl, who, with her family, had shortly before emigrated from the West Indies to Savannah. They lived together and continued to do so for many years. They resided but a short time in Savannah, then removed to Barnwell, in South Carolina, and finally to Charleston. During this time,

many children were born, who were reared in the house where their parents lived, the mother passing by the name of Mrs. Jewell. In the year 1810, they separated by mutual consent, after executing the following paper.

"Articles of agreement between Benjamin Jewell and Sophie Prevost, and receipt of Sophie Prevost, dated 1810 and 1811.

"Articles of agreement entered into this 4th day of December, 1810; Benjamin Jewell on the one part, and Sophie Prevost on the other.

"Whereas, the said Benjamin Jewell and Sophie Prevost have cohabited for several years past, and have had eight children, but are now willing and desirous to separate and live asunaer; on certain terms and conditions hereinafter specified: Now this instrument of writing witnesseth, that the said B. Jewell and Sophie Prevost do agree henceforward to live separate and asunder.

"The said B. Jewell, on his part, consents and engages that the said Sophie Prevost shall have under her sole and absolute control, and free from all restraint or control by the said B. Jewell, the following children, viz.: Juliana, Daniel, and Washington, each child having its clothing: The said Sophie Prevost, on her part, engages and consents, that the said B. Jewell shall have under his sole and absolute control, and free from all restraint or control by the said Sophie Prevost, the following children, viz.: Benjamin, Joseph, Hannah, Hetty, and Delia, with their clothing. The said Sophie is to pay all the expenses of clothing, education, and maintenance of the children above allotted to her; and the said Benjamin Jewell is to pay all the expenses of clothing, education, and maintenance of the children allotted to him; and moreover engages to pay for one year's schooling, viz., the sum of $40 for the child Juliana, in order to complete her schooling.

"The said Sophie engages not to disturb the said Benjamin, in respect to the management of the children allotted to him, nor in any manner control or interfere with them. And the said Benjamin engages in like manner in respect to those children assigned to the said Sophie.

"And in consideration of this separation and consent to live asunder, the said Benjamin engages to pay to the said Sophie Prevost the sum of $3000; and to give her a bill of sale of the fellow Jesse, the girl Harriet, the wench Nancy, with her three

children, Charlotte, Mary, and Charles; also, the following articles of furniture, (here follows a list of furniture;) and in consideration of the above, on the part of said Benjamin Jewell, the said Sophie Prevost doth hereby release and discharge the said Benjamin Jewell from all claims and demands whatsoever. In witness whereof, the parties to these presents have set their hands, this 4th of December, 1810.                               BENJAMIN JEWELL,

"W. L. SMITH.                               SOPHIE PREVOST."

(*Note.* The signature of W. L. Smith in the original paper is written with pencil.)

It was admitted that Sophie Prevost gave sundry receipts for the cash and furniture mentioned in the above agreement.

It was further admitted, that in June, 1813, Benjamin Jewell was married in Richmond, Virginia, to Sarah Isaacs, by the regular minister of the Hebrew congregation, according to the rites and ceremonies observed by the Jews, soon after which they removed to the state of Louisiana.

In 1818, Sophie Prevost married a man by the name of Storne, continuing to reside in Charleston.

In 1828, Benjamin Jewell died, intestate, in Louisiana; and his widow and children living there, brought an ejectment against his children in Charleston, to recover a house and lot, of which the latter were in possession.

The whole question turned upon the validity of the first marriage; there being no controversy about the validity of the second, in case Jewell, at the time of contracting the second marriage, had not a wife living.

To support the first marriage, it was given in evidence by Sophie Prevost, (who had released her interest in the property in dispute,) and by others, that at the time of the marriage she and her family had recently arrived from the West Indies; that she was very young; that they brought with them some negroes of whom Jewell received three as her portion; that, in consequence of her being a Catholic and Jewell a Jew, the ceremony of marriage between them was performed by a magistrate named White, in the presence of her family and other persons; that she was entirely ignorant of the English language; that she lived with Jewell as his wife, in his house, and under his name; that they removed to Barnwell district in South Carolina, where also she

T 2

associated with the neighbourhood as his wife; that they then removed to Charleston, where Jewell kept a clothing store; that she attended to the concerns of the shop and family as Mrs. Jewell; that the children were circumcised according to the Jewish laws, and that none but legitimate children are so; that she was recognised in society as his wife; that, in 1806, she executed a release of dower in some property which Jewell had mortgaged, and that such release was in the form which the law prescribed for wives; that according to the general opinion among Hebrews, a marriage, in the scriptural sense, between a Christian and a Jewess is not legal; but that the Jewish law considers a connection between a Hebrew man and a Christian woman, as concubinage; that it is the duty of a Jew to obey the laws of the country in which he lives; that, if a divorce be obtained according to their law, by mutual consent, it is not considered unlawful to marry again; that the man writes a paper to the effect that the woman is at liberty to marry again, and the act on the part of the woman is her receiving it and assenting to it.

The evidence offered by the plaintiffs in the suit below, to rebut the idea that a marriage had ever taken place between Jewell and Sophie Prevost was, in the first place, the following paper:

"*Savannah,* 10*th March,* 1796.

"Received of Benjamin Jewell, the sum of five hundred dollars, in full for the cause of action which I brought against him on a promise of marriage; which sum of five hundred dollars, I acknowledge to be in full compensation, and from which I do release and exonerate the said Benjamin Jewell of all actions, demands, or engagements, whatsoever, from the beginning of the world to the present day. [The remaining part of the paper is characterized by the court as gross and indecent, and the Reporter does not think proper to insert it. Its purport was to recognise a continuance of the connection on another basis than marriage.]                    Sophie Prevost.

"Witness,

"Charles Harris, Geo. J. Hull."

It was also given in evidence by the plaintiffs that the above paper was recorded in the clerk's office of the Superior Court for Chatham county, (the county in which Savannah is situated,) in

the month of August after its date, on the oath of Mr. Harris, one of the subscribing witnesses.  The handwriting of Mr. Harris, who was a distinguished counsellor at law in Savannah, as well as that of Hull, the other subscribing witness, who was a deputy marshal of Georgia, was proved by a judge and by one of the members of the Savannah bar.  It was also given in evidence that Charles Harris was of the highest standing and character; was a distinguished man in the state, and understood and spoke French fluently.  No other part of the paper was in his handwriting except the words " witness, Charles Harris."

It was also given in evidence by the plaintiffs, that upon an examination of the minutes of the courts, where the record of magistrates still remains, the name of White, who was said to have performed the marriage ceremony, did not appear as a justice of the peace, in Savannah, in the year 1796, or at any time previous.

It was also given in evidence by the plaintiffs, that Jewell and Sophie Prevost were not considered to be married, by one Borbot, the clerk of Jewell, or by the persons with whom he associated.

It was further given in evidence on behalf of the plaintiffs, by the Rev. Mr. Poznanski, the officiating minister of the Hebrew congregation in Charleston, that if a Jew has a child by a person who is not a Jewess, the rite of circumcision may be performed, and that it is not necessary (for circumcision) that the child should be legitimate.

To rebut all this evidence, the defendants gave testimony, by Sophie Prevost or Jewell, that she never signed the paper, purporting to be a release of all damages, &c., or any paper of the kind, and that she never was acquainted with either Harris or Hull; and by R. W. Pooler, the clerk of the court, that aldermen of the Common Council of Savannah were *ex officio* justices of the peace, for all purposes, within the town and hamlets of Savannah, but that he did not know whether or not White was an alderman in the years 1794, 1795, or 1796.

There were two bills of exceptions taken in the court below; the first of which related to the admissibility of certain evidence which the court rejected; and the second to the instructions prayed to be given to the jury, and refused by the court, as also to the instructions actually given.

The first bill of exceptions is as follows, viz.—

The plaintiff, to sustain his action, proved the marriage of Benjamin Jewell, on the 30th June, 1813, with Sarah Isaacs, one of the lessors; the seisin of Benjamin Jewell; his death; and that the other lessors of the plaintiff are the issue of that marriage.

The defendants, to defeat the plaintiff's action, and prove themselves the heirs at law of Benjamin Jewell, examined Sophie Storne, who testified to a prior marriage between her and Benjamin Jewell; and that he held her out as his lawful wife; and that eight children were born during the time they lived together; and offered in evidence, to sustain their defence, the testimony on the part of the defendants contained in the schedule annexed to this bill of exceptions. To rebut which evidence, the plaintiff offered the deeds and papers annexed to this bill of exceptions, signed by Sophie Storne, by the name of Sophie Prevost, and gave evidence that the said Benjamin and Sophie separated in December, 1810; and then offered in evidence, the declarations of one Simons, the deceased husband of one of the defendants, that his wife's mother was not married to her father; which evidence the court overruled, and the plaintiff excepted thereto. And the plaintiff further offered in evidence a file of the Charleston Courier for the year 1811, and showed that the manuscripts or originals, from which the paper of that day was published, are lost or mislaid; and that the Charleston Courier was then the leading commercial paper in Charleston, where the parties lived, and offered to read from the file the following notice, as published on the 22d January, 1811, and for three successive weeks from that time, viz.—

" NOTICE.

"The subscriber forbids all persons from giving credit to Mrs. Sophie Prevost, on his account, as he will pay no debts whatever she may contract.

(Signed,)                    " BENJAMIN JEWELL."

But the court refused to allow the evidence to be read; to which ruling of the court the plaintiff excepted.

Second bill of exceptions:—And at the trial of the said cause, after the parties had produced the evidence in the schedule hereto

annexed, the plaintiffs desired the said justices to instruct the jury, as follows:

1. That if Sophie Prevost and Benjamin Jewell agreed to live in concubinage, and, under that agreement, cohabited together, the connexion is not matrimony, although they passed themselves off, to other persons, as man and wife.

2. That if Benjamin Jewell and Sophie Prevost asserted, contrary to the fact, that they were married, when, in reality, they had agreed to cohabit without marriage, such assertion will not change the nature of their connexion so as to legitimate the children that were the produce of that union.

3. That if the jury do not believe that Benjamin Jewell and Sophie Prevost were married by a magistrate in Savannah, in the year 1796, or before that time, then there is no evidence of a marriage before them, on which they can find the defendants to be the legitimate heirs of Benjamin Jewell.

4. That if the said Benjamin and Sophie were living in concubinage in 1796, under the agreement produced in evidence, and continued to cohabit together afterwards, such cohabitation will not amount to marriage, notwithstanding their representations to third persons, unless there was a distinct agreement between them to rescind the former agreement, and to stand to each other thenceforward in the relation of husband and wife. And that if such new agreement be relied on, it ought to be established by satisfactory proof, and cannot be inferred from common reputation.

5. That if there was a promise of marriage, followed by sexual intercourse between Benjamin Jewell and Sophie Prevost, and she afterwards sued him for breach of marriage promise, or received a sum of money in satisfaction of the injury done her by refusing to marry her, the promise is thereby released, and the promise and subsequent intercourse do not constitute the parties man and wife.

6. That a promise to marry at a future time, followed by cohabitation, does not constitute marriage, though the promise be accepted at the time when it was made.

And the defendants prayed the justices to instruct the jury:

1. That if they believe that before any sexual connexion between Miss Prevost and Benjamin Jewell, Mr. Jewell and Miss

Prevost, in the presence of her family and his friends, agreed to marry, and did afterwards live together as man and wife, the tie was indissoluble even by mutual consent.

2. That if the jury believe a marriage was celebrated in Savannah by a magistrate, the moment the celebration was over, the contract was perfect and indissoluble.

3. That even if the paper signed in Savannah in March, 1796, was signed by Sophie Prevost, and was so signed when she was unmarried, still it was not an indissoluble contract, but one which the parties were at full liberty to cancel and retract. And that the constant admission by both parties that they were man and wife, their reception in society, his calling her to renounce her dower, are evidence to authorize the jury to draw the conclusion that Mr. Jewell and Sophie Prevost had concluded and agreed to become and live together as lawful husband and wife prior to 1810; and if so, the separation does not affect the right of the children of that marriage; they are legitimate.

And the said justices refused the third instruction prayed by the plaintiffs. And as to the sixth instruction prayed by the plaintiffs, the said justices instructed the jury, that " if the contract be made *per verba de presenti,* and remains without cohabitation, or if made *per verba de futuro,* and be followed by consummation, it amounts to a valid marriage, and which the parties (being competent as to age and consent) cannot dissolve; and it is equally binding as if made in *facie ecclesiæ.*" 2 Kent's Com. 86, 3d edit. To which refusal and instruction the plaintiffs except. And the said justices gave the first instruction prayed by the defendants, to which the plaintiffs also except.

*Coxe* and *Legaré,* attorney-general, for the plaintiffs in error. *Hunt,* for defendants.

The following were the points relied upon on the part of the plaintiffs in error:

1. That the declarations of Simons ought to have been admitted in evidence.

2. That the exclusion of the notice in the newspaper was error.

3. That Mrs. Storne was clearly incompetent as a witness, if her testimony was true, she having been the wife of Jewell. She

was also interested in the event of the cause. (This point, however, was not in the bill of exceptions, and was not discussed.)

4. That the instructions asked for by the plaintiffs, and refused by the court, ought to have been given.

5. That there was error in the instruction given at the request of the defendants.

*Coxe*, for plaintiff in error, entered into a particular examination of the testimony, all of which was before the court, in consequence of the refusal of the court below to grant the third instruction prayed by the plaintiffs, which was, "that if the jury did not believe that Benjamin Jewell and Sophie Prevost were married by a magistrate in Savannah in the year 1796, or before that time, then there was no evidence of a marriage before them."

This investigation, as also that of the counsel who argued the case subsequently, is omitted in the report.

As to the admissibility of Simons's declarations, 1 Stark. 59, (2 Eng. Com. Law, 293;) 1 Maule and Selw. 636; 1 Stark. 69, (2 Eng. Com. Law, 299;) 10 East, 282; 13 Ves. 140; 1 Peters, 328.

As to the admissibility of the publication in the newspaper, 2 Stark. 66, 165, 166, (3 Eng. Com. Law, 247, 296.) That gazette is good evidence to prove public notice, 10 Cond. Ch. Rep. 217.

As to what constitutes marriage, Dalrymple v. Dalrymple, 4 Condensed Ecclesiastical Reports, 485, 488, 489; 4 Bac. Abr. title "Marriage;" Easterly v. Easterly, Dyer, 305; Bac. Abr. pl. 60; Buller's N. P. 101, 102; 3 Dane's Abr. 294, 299; 18 Johns. 349; 7 Wend. 51; 10 Watts, 158, 161, 162.

*Hunt*, for defendants.

As to what constitutes marriage, Bracton, b. 1, p. 4; c. 5, s. 7; Swinburne on Espousals, 198, also 5, 6, 7, 223, 224, 226, 227, 234; Taylor on Civil Law, 254, 258, 268, 277, 279; 1 Milton's Paradise Lost, as to the ceremony which took place on the first marriage; 4 McCord, 256; 18 Johns. 347; 4 Johns. 53; 2 Bla. Rep. 877; 1 Dow's Rep. 176, 181; Moore, 170; Manuscript Cases in South Carolina, Strongfellow v. Strongfellow, also Billings v. Billings, decided by Chancellor Harper; 1 Price's Rep. 83; 6 Mod. 172; 1 Dow's Rep. 189.

As to the admissibility of the newspaper evidence, case of the Berkeley Peerage, 4 Camp. 401.

As to Simons's declarations; no time or circumstances are mentioned when they were made, and he does not testify to general reputation.

*Legaré,* for plaintiffs.

As to Simóns.  His declarations were against his interest.  Old coats of arms, tombstones, &c. all now admitted.  1 Peters, 337; 13 Ves. 514; Cowp. 591, 594; 2 Russ. and Mylne, 147, 156; 2 Cond. Ch. Rep. 431; Greenl. on Evidence, 159.

As to the newspaper, 7 Peters, 100; Pothier, 295, 296; 6 East, 192; 2 Russ. and Mylne, 435.

As to what constitutes marriage, 6 Serg. and Rawle, 333; 10 Johns. 226, analogous cases of partnership; 2 Barn. and Ald. 387; 18 Johns. 348; 4 Johns. 52; 2 Dow, 462; Cunningham *v.* Cunningham, 2 Dow, 504; North *v.* Valek, Dudley's Ch. Rep.; 6 Binney, 405; 2 Dane's Abr. 302; 2 Cowen's Phillips, 354, collection of cases; Alderson *v.* Clay, 1 Stark. Rep. 405, (2 Eng. Com. Law, 445;) 2 Stark. on Evidence, 590, 688; *Kelly v.* Jackson, 6 Peters, 622, 62; Greenl. on Evidence, 39; 4 Hag. Ec. Rep. 519; Dalrymple *v.* Dalrymple was a clear case of *verba in presenti; " accipio te."*

As to the proof offered that none but the legitimate children of the Jews are circumcised, Gen. xvii. 9.

On the general subject of marriage, Planke's History of Christian Society, vol. 1; Pothier, 5, 30, 38, 39; Swinb. 27, 231, 227; Collins *v.* Jethro, 6 Mod. 155; 3 Dane's Abr. title "Marriage," 301, that the canon law was never adopted in this country; Brown *v.* United States, 8 Cranch, 110; 3 Dall. 281; 2 Bibb's Rep. 343.

Mr. Chief Justice TANEY delivered the opinion of the court.

This is an action of ejectment brought by the plaintiffs in error against the defendants, to recover a house and lot in the city of Charleston, in South Carolina.  The plaintiffs claim to be the lawful wife and children of Benjamin Jewell, deceased, who, it is admitted, died intestate and seised of the premises in question. The defendants also claim to be the lawful children of the same Benjamin Jewell, by Sophie Storne, who, before her marriage, was named Sophie Prevost, who is still living and has conveyed all

her interest to her children, and the rights of the parties depend altogether upon the validity of this marriage.

At the trial in the Circuit Court, the verdict and judgment being in favour of the defendants, the case is brought here by a writ of error, sued out by the plaintiffs.

The questions before this court appear in the two bills of exception taken by the plaintiffs. The testimony as set forth in the record is voluminous, and in many instances contradictory. But a very brief statement will show the points of law which have been brought here for revision, and it is unnecessary to encumber the case with the mass of testimony which was offered to the jury by the respective parties, in order to prove or disprove the marriage in controversy.

The plaintiffs proved the marriage of Benjamin Jewell, on the 30th of June, 1812, with Sarah Isaacs, one of the lessors; and that the other lessors of the plaintiff are the issue of that marriage.

The defendants, in order to show that they, and not the plaintiffs, were the heirs at law of Benjamin Jewell, examined Sophie Storne, who stated that she was married to Benjamin Jewell, at Savannah, in Georgia, in 1794 or 1795, by a magistrate whose name she did not recollect, in the presence of several witnesses; that the said Jewell was a Jew, and the witness a Catholic; that her mother would not consent that she should be married according to the Jewish form, and that Jewell would not consent to be married according to their form, and on that account they were married by a magistrate; that they lived together as man and wife many years, and that the defendants are the issue of that marriage; that they at length separated, and she having heard that Jewell was married again, thought that she also had a right to marry, and accordingly married a certain Joseph Storne, with whom she lived some years, and who is since dead. Various acts and declarations of the parties, and the general reputation in the places where they lived, were also offered in evidence on the part of the defendants, to prove that the said Jewell and Sophie had lived together as man and wife, and had constantly acknowledged and spoken of each other as such.

To rebut this evidence, and to show that the connection of the parties was merely concubinage, and not marriage, several instruments of writing, alleged to have been executed by them at dif-

U

ferent times, were offered in evidence on the part of the plaintiffs, and also various acts of the parties and the general reputation in the places where they lived.

After this evidence on the part of the plaintiffs and defendants had been given to the jury, the plaintiffs offered the declarations of one Simons, (the deceased husband of one of the defendants,) that his wife's mother was not married to her father. It was objected to by the defendants, and rejected by the court.

The plaintiffs also further gave in evidence that the separation took place in Charleston, in the month of December, 1810, where it was admitted that the parties had been living together for many years, and then produced a file of the Charleston Courier for the year 1811, and proved that the manuscripts or originals from which the paper of that day was published are lost or mislaid; that it was at that time the leading commercial paper in Charleston; and thereupon offered to read from the file the following notice, as published on the 22d of January, 1811, and for three successive weeks from that time, viz.:

"NOTICE.

"The subscriber forbids all persons from giving credit to Mrs. Sophie Prevost on his account, as he will pay no debts whatever she may contract.                    BENJAMIN JEWELL."

But the court refused to allow the evidence to be read; and these two points of evidence form the subject of the first exception.

The second exception brings up the question as to what constituted a legal marriage in Georgia and South Carolina, in one or the other of which states the parties had always lived from the time of their original connection. Several instructions were asked for on both sides, some of which would appear not to have been controverted; and the points before this court will be better understood, by excluding all the prayers on both sides which do not form a part of the exception, and are therefore not now the subjects of review in this court. The exception is confined to the third and sixth instructions asked for by the plaintiffs, and to the first asked for by the defendants. They are as follows:

3. That if the jury do not believe that Benjamin Jewell and Sophie Prevost were married by a magistrate in Savannah, in the year 1796, or before that time, then there is no evidence of a

marriage before them, on which they can find the defendants to be the legitimate heirs of Benjamin Jewell.

6. That a promise to marry at a future time, followed by cohabitation, does not constitute marriage, though the promise be accepted at the time when it was made

Defendant's prayer. 1st. That if the jury believe that before any sexual connection between Sophie Prevost and Benjamin Jewell, they, in the presence of her family, and his friends, agreed to marry, and did afterwards live together as man and wife, the tie was indissoluble even by mutual consent.

Whereupon the court gave the instruction requested by the defendant, and refused the third instruction asked for by the plaintiff; and upon the sixth directed the jury that if the contract be made *per verba de presenti*, and remains without cohabitation, or if made *per verba de futuro*, and be followed by consummation, it amounts to a valid marriage, and which the parties (being competent as to age and consent) cannot dissolve; and it is equally binding as if made in *facie ecclesiæ*. To this refusal and instruction the plaintiff excepted.

We proceed to examine the questions presented by these exceptions in the order in which they are stated.

The first point in the first exception is upon the rejection of the declarations of Simons, the deceased husband of one of the defendants. It is true that Simons cannot be presumed to have known of his own personal knowledge the particular fact of which he was speaking; and he must have made the statement upon information derived from others. He does not appear to have named the person from whom he obtained his information, nor to have stated that his knowledge was derived from the general understanding and reputation in his wife's family. But the knowledge of events of this description most generally exists in every family, and hence the declarations of one of its members is admissible, although he does not mention the source from which he derived his information; and such declarations are equally admissible whether his connection with the family is by blood or marriage. In the case of Vowles *v.* Young, 13 Ves. 140, testimony precisely similar to that now offered was received; and we think the declarations of Simons ought to have been admitted, and that the Circuit Court erred in rejecting them.

The second point in this exception was upon the admissibility of the advertisement in the Charleston Courier; and upon this point also we differ in opinion with the Circuit Court.

It was admitted that the parties had cohabited together for a long time, and that the defendants were the issue of that intercourse; and in order to prove that their mother was married to Jewell, the acts and declarations of the parties during their cohabitation were offered in evidence by the defendants, (and were unquestionably admissible,) to prove that during that time she was acknowledged and treated by Jewell as his lawful wife. Acts and declarations were also offered on the part of the plaintiffs, to prove the contrary. The separation took place in December, 1810, in Charleston, where the parties had lived together for many years, and this advertisement appeared in the principal commercial paper of the place in the January following. It was offered by the plaintiff, like the acts and declarations above mentioned, on his part to rebut the testimony which had been given by the defendants; and this advertisement would manifestly have been admissible on the same rules of evidence, if it had appeared while the parties were still living together or at the moment of separation. And although they had parted a short time before the publication, yet it followed so immediately afterwards, that it must be regarded as a part of the *res gesta*, and as one of the circumstances connected with the separation and previous cohabitation. Whether it was inserted by Jewell or not; and if it was, what were his motives for so doing, are questions for the consideration of the jury and not for the court. The plaintiff had a right to show the fact that such an advertisement did appear at the time mentioned, and it was with the jury to determine the degree of weight, if any, to which this fact was entitled, taking into consideration all the circumstances under which it appeared.

As relates to the points contained in the second exception, we think the court were right in refusing the third instruction requested by the plaintiffs. In order to explain the question intended to be raised by this prayer, it is proper to state, that in addition to the testimony of Sophie Storne, herein before mentioned, certain acts and declarations of the parties, which it is not necessary to set forth at large, were given in evidence by the de-

fendants, by other witnesses, to prove that the parties were married at Savannah, about the time mentioned by Sophie Storne, and before they cohabited together. The plaintiff, on the contrary, in order to prove that they were not married, and that she went to live with him as his concubine, offered in evidence a paper, purporting to be signed by the parties, and dated March the 10th, 1796, by which there was an open and plain agreement on her part to become the mistress of Jewell. The paper is gross and indecent in its language, and it is unnecessary to state more particularly its contents. The third instruction asked for by the plaintiff is founded upon the assumption that this paper is genuine, and insists that if the marriage did not take place before its date, then the intercourse began under this agreement, and their subsequent cohabitation must be presumed to have been of the same description, unless an actual marriage afterwards was proved. But the answer to the argument is, that the authenticity of the paper is denied by the defendants, who contend that it was fabricated by Jewell, or, if signed by Sophie, that she was entrapped and deceived, and ignorant of its contents. The question, therefore, is open to the jury, upon the whole evidence, to determine upon what terms and in what character the connection originally began; and the evidence offered by the defendants, that they lived together for so many years as man and wife, and treated and spake of each other as such, are certainly admissible to show that a marriage had taken place between them at some time or other, and whether before or after the date of the paper could not be material.

The residue of the instructions contained in this exception all involve the question as to what constituted marriage, at the time of this cohabitation, by the laws of Georgia and South Carolina. The question has, of course, no concern with the nature and character of the union of man and wife in a religious point of view. But regarding it (as a court of justice must do) merely as a civil contract, and deciding in what form it ought to have been celebrated in order to give the parties the legal rights of property which belong to the husband or the wife, and to render the issue legitimate, the Circuit Court held, and so instructed the jury, that if they believed that, before any sexual connexion between the parties, they, in the presence of her family and friends,

agreed to marry, and did afterwards live together as man and wife, the tie was indissoluble even by mutual consent. And that if the contract be made *per verba de presenti*, and remains without cohabitation; or if made *per verba de futuro*, and be followed by consummation, it amounts to a valid marriage, and which the parties (being competent as to age and consent) cannot dissolve; and that it is equally binding as if made in *facie ecclesiæ*.

Upon the point thus decided, this court is equally divided; and no opinion can therefore be given. Upon the questions, however, contained in the first exception, the judgment of the Circuit Court must be reversed, and a *venire de novo* awarded.

### ORDER.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the district of South Carolina, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be and the same is hereby reversed, with costs, and that this cause be and the same is hereby remanded to the said Circuit Court, with directions to award a *venire facias de novo*.