### 32812. GOBER *v.* NOLAN.

DECIDED FEBRUARY 17, 1950.

*G. Seals Aiken,* for plaintiff.
*Barrett & Hayes,* for defendant.

SUTTON, C. J. Ruby B. Gober sued W. H. Nolan in Fulton Superior Court for damages on account of personal injuries she received when she was thrown from a horse which she had rented from the defendant.

The action was based on negligence: "(a) In that the defendant knew the horse for which he charged and accepted money from the plaintiff to ride upon was a wild, dangerous and vicious horse which would likely run rapidly and recklessly and violently and suddenly turn and throw the plaintiff as it did on this occasion. (b) In that the defendant knew the said horse was not gentle and safe as requested by her and for which she paid, but was wild, vicious and uncontrollable and dangerous to ride upon and that it would probably run and throw the plaintiff as it did do on this occasion. (c) In that the defendant failed to properly tighten and fasten the saddle on said horse, thus allowing it to sway from side to side as the horse ran so rapidly and recklessly and turned off the road

as aforesaid. (d) In that the defendant failed to give the plaintiff any warning whatsoever that the said horse was wild, reckless and vicious and likely to run rapidly and recklessly and turn suddenly from the road and twist and throw her as it did on this occasion."

The evidence adduced by the plaintiff and her witnesses is, in substance, as follows: On the afternoon of April 26, 1947, the plaintiff, who was 26 years old at the time, two young men, George Hooten and another named Stanley, and two young women, Bennie Murdock and Dorothy Blackburn (now Mrs. Stanley), went to Adams Park in Fulton County for the purpose of having a picnic and going horseback riding. All of the party except Dorothy Blackburn engaged horses from the riding academy operated by the defendant at the park, and the plaintiff paid an attendant $2 for her horse, the customary price for an hour's riding, and specified that she wanted a gentle horse. Another attendant brought her a reddish brown horse, already saddled, and assisted her in mounting the horse. After being seated on this horse she asked the attendant if the horse was one that would stop when she said "whoa", and he assured her that it was a gentle horse. The group left the stables on horseback and went up one road and then another, and had turned onto still another road when the plaintiff's horse, without apparent cause, suddenly bolted and started running. This was about 15 or 20 minutes after the group left the stables, and at the time the plaintiff was ahead of Bennie Murdock and George Hooten. She tried to stop the horse by pulling on the reins and calling "whoa" but this had no effect on the horse. The saddle girth was loose, and the saddle had started slipping and swaying when the horse started running. The plaintiff called to Hooten, telling him that she could not stop the horse and that the saddle was slipping. Hooten saw and heard her but the horse kept running and disappeared from his view over a hill before he could reach the plaintiff. The horse turned to the right into some woods, and the plaintiff was thrown to the left from the horse as the saddle swayed to that side, and she was knocked unconscious when she hit the ground. A few minutes later, after a search, George Hooten located her, and she was flat on her back at the base

of a tree in a semi-conscious state. Bennie Murdock was also thrown from her horse a short distance from where the plaintiff was, and she was screaming, and Hooten left the plaintiff and went to where Bennie Murdock was. Sometime thereafter an attendant located the plaintiff's horse and started riding the horse back to the stables, and on the way back was thrown from the horse. Hooten brought an automobile to within a few feet of where the plaintiff was, she was placed in the automobile, and the entire group went to Grady Hospital, where the plaintiff and Bennie Murdock received treatment. The plaintiff's injuries were severe, and she remained in the hospital for a week, and then went to her mother's home in Paulding County, where she remained for two more weeks before returning to work. She received injuries to her back and wore a brace continually for about five months, and after returning to work and during the time she was wearing the brace she worked only about three hours a day, and since that time has worked only about six hours a day. She is employed as a secretary at a salary of $150 per month, and her employer has paid her salary continually since she received her injuries. There is evidence as to the amounts of her medical expenses, and to the effect that her capacity to work and engage in the activities of a normal person of her age is greatly impaired, and that her injuries are permanent and will continually cause her pain and suffering.

At the close of the plaintiff's evidence the trial judge on motion of the defendant granted a nonsuit, and the exception here is to that judgment.

Code § 110-310 provides that "A nonsuit shall not be granted merely because the court would not allow a verdict for plaintiff to stand; but if the plaintiff fails to make out a prima facie case, or if, admitting all the facts proved and all reasonable deductions from them, the plaintiff ought not to recover, a nonsuit shall be granted." It is well-settled law that this court must take that view of the evidence most favorable to the plaintiff in passing on the question of whether the trial court rightly awarded a nonsuit; and if there is any evidence tending to establish any one of the allegations of negligence as the proximate cause of the plaintiff's injuries a jury would be authorized to

find for the plaintiff and the award of a nonsuit would be error. See *Getzinger* v. *Lariscy, 77 Ga. App.* 768, 770 (49 S. E. 2d, 907). It was alleged that the defendant was negligent in failing to properly tighten and fasten the saddle on said horse, thus allowing the saddle to sway from side to side when the horse ran (see (c) supra), and there is evidence showing that the saddle did sway from side to side and was loose at the time the horse bolted and began to run, and it is clearly inferable that this could have caused the plaintiff to fall or be thrown from the horse. This evidence and the evidence tending to establish the plaintiff's damages was sufficient to prevent the award of a nonsuit, and for this reason a judgment of nonsuit was error. Any negligence of the plaintiff in failing to discover sooner the loose condition of the saddle girth is necessarily included in the issue for the jury.

Knowledge on the part of the defendant as to the wild and dangerous character of the horse hired is not a necessary ingredient to sustain an action for injuries to the person to whom the horse was hired, it only being necessary to show a lack of ordinary care or negligence in furnishing an animal not suitable for the intended use. See *Cooper* v. *Layson Bros., 14 Ga. App.* 134 (4) (80 S. E. 666). However, the plaintiff made certain allegations of negligence (see (a), (b), and (d), supra) as to the knowledge of the defendant of the wild and dangerous character of the horse, but we are of the opinion that the evidence was not sufficient to sustain these allegations. The fact that the horse ran and threw the plaintiff and later threw an attendant is evidence only of the character of the horse at the time, and unless there was evidence of prior acts of a similar nature or some evidence showing that the defendant knew of the character of the horse in this respect, or that he could have known of the same by the exercise of ordinary care, her case with respect to these grounds of negligence would fail. But it was error to grant a nonsuit for the reason above stated.

*Judgment reversed. Felton and Worrill, JJ., concur.*