265 P.2d 988

**KOSER v. HORNBACK et al.**

No. 7909

Supreme Court of Idaho.

Jan. 18, 1954.

Maurice H. Greene and Kenneth O'Leary, Boise, for Morgan.

E. G. Elliott, Frank Langley, Boise, for appellant.

James W. Blaine, Boise, for Hornback.

TAYLOR, Justice.

Plaintiff, appellant, brought this action to recover for personal injuries sustained in a fall from a horse. The accident occurred July 10, 1949, at the Sulphur Creek Ranch in Valley County, Idaho. Horses were kept at the ranch for hire to guests, at a charge of $5 per day for each horse.

The defendants answered separately. The defendant Morgan admits that he is the owner of the ranch; denies all other allegations of the complaint and affirmatively alleges contributory negligence on the part of the plaintiff. The defendant Hornback alleges Morgan's ownership of the ranch, but alleges that Morgan was not the operator, or interested in the operation, of the ranch; that he, Hornback, as lessee operated the ranch "in his own name and in his own behalf and for the purpose of entertaining paying guests and did maintain upon said ranch saddle horses thereon for the purpose of letting and hiring said horses to the public." Hornback denies all other allegations of the complaint and affirmatively alleges contributory negligence on the part of the plaintiff.

At the close of plaintiff's evidence the defendant Hornback made a motion for a judgment of non-suit under subparagraph 5, § 10–705, I.C., which provides that a judgment of non-suit may be entered "By the court, upon motion of the defendant, when, upon the trial, the plaintiff fails to prove a sufficient case to entitle him to a verdict or judgment." In making the motion Hornback's counsel, in addition to referring to the language of the statute, added, "on the ground that the plaintiff hasn't made out a prima facie case by his evidence."

The defendant Morgan joined in the motion "on the ground that the plaintiff has failed to make out a prima facie case of actionable negligence; also on the ground that the plaintiff has wholly failed to make any proof or showing of relationship of principal and agency relative to the defendant Morgan so as to hold the defendant Morgan in any way legally responsible for the actions of the horse.

Appellant challenges the sufficiency of the motion in that it does not point

out the particulars in which the evidence is held to be insufficient. This is a valid objection to the granting of the motion insofar as defendant Hornback is concerned. Davis v. Pancheri, 72 Idaho 28, 236 P.2d 716. The motion on behalf of the defendant Morgan may be regarded as sufficient insofar as it calls particular attention to the evidence on the issue of the relationship between himself and the defendant Hornback. The motion by Morgan being sufficient on this one important issue, and this court having reached the conclusion that the judgment should be reversed and the cause remanded for new trial, we will consider the sufficiency of the evidence as against the non-suit, and other questions likely to arise upon a new trial. § 1–205, I.C.

Both the trial court and this court, in reviewing plaintiff's evidence on motion for non-suit, must consider it in the light most favorable to the plaintiff. If there is substantial and competent evidence which, uncontradicted, would justify reasonable men in concluding that plaintiff was entitled to prevail, then the non-suit should be denied. Or, if the evidence is such that reasonable men might draw different conclusions therefrom, as to the controlling issues in the case, then those issues should be submitted to the jury. Burt v. Blackfoot Motor Supply Co., 67 Idaho 548, 186 P.2d 498; McKee v. Chase, 73 Idaho 491, 253 P.2d 787, and cases there cited.

"A court may direct a verdict for a defendant only when, with all conflicting evidence disregarded and the plaintiff's evidence given all the value to which it is legally entitled, there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff. Burgess v. Cahill, 26 Cal.2d 320, 321–322, 158 P.2d 393, 159 A.L.R. 1304." McNeal v. Greenberg, Cal. App., 255 P.2d 810, at page 813.

The court may not weigh the evidence, or resolve the conflicts therein, or determine what conclusions should be drawn therefrom. That is the function of the jury, and the essence of a jury trial.

Viewed in the light required by the rule, the following may be considered a fair summary of plaintiff's case. On the morning of July 10, 1949, plaintiff with four companions arrived at the ranch intending to proceed from there by horseback on a fishing trip. Hornback and another, referred to as his "wrangler", were on hand to receive plaintiff and his party. The horses previously arranged for were saddled and ready. The horse ridden by plaintiff was assigned to him by Hornback. Hornback and his wrangler loaded the fishing equipment, brought by the guests, upon their respective horses. Plaintiff and one Simpkins were in the rear as the guests started down the trail. After going a short distance, plaintiff discovered he had forgotten a metal tackle box containing

tackle belonging to himself and Simpkins. He rode back to the barn, where Hornback put the tackle box in a gunny sack, tied a string around it, and handed it to the plaintiff, and this conversation occurred:

"At the time I [plaintiff] asked him: 'What is the matter, is the horse skiddish or something?' He said, 'No, there is nothing the matter, just sometimes it scares him a little bit to start out with.' So he then said, 'Just turn right down the trail—start down the trail and hang it on the saddle horn.'"

Plaintiff proceeded back along the trail and having gone about one hundred yards, he hung the sack containing the tackle box on the saddle horn, and the sack containing the box either fell or rolled against the horse's neck. Whereupon the horse jumped, dislodging plaintiff from the saddle and he fell to the ground. His right foot being caught in the stirrup, he was dragged for some distance over rough, stumpy ground and kicked by the horse.

On cross-examination, plaintiff testified as follows:

"Q. As soon as you put it over the horn why the horse tossed you? A. Well, not right instantly, no.

"Q. It was a little bit later? A. It jumped out sideways and put me over on one side and I didn't quite get back in the saddle when I hit him on the shoulder again and he jumped.

"Q. The tackle box hit him on the shoulder? A. Yeah, and I lost one of the reins and he got his head down and started to buck.

"Q. When you were getting ready to place this tackle box on the horn of the saddle did it make rattling noises? A. It didn't.

"Q. Didn't make any noise at all? A. It didn't.

"Q. Did it make any noise after you had it on the saddle? A. No, sir, it just went ahead of the saddle and touched him on the shoulder.

"Q. Hit him on the shoulder? A. Yes.

"Q. That is where you dropped it after you got it over the horn? A. That is where I got it off of.

"Q. That is what made him buck when you struck him on the shoulder? A. No, sir.

"Q. What made him buck? A. He was bucking when I was still on there and I got it off the saddle horn.

"Q. As I understand your testimony, you put it on the horn? A. That is right.

"Q. And dropped it and when you put it down by the side it hit his shoulder and he bucked? A. I didn't drop it down by the side.

"Q. You laid it? A. Laid it there.

"Q. And it hit his shoulder? A. Yes.

"Q. And he bucked? A. Yes.

"Q. That is the reason he bucked, and that is the reason you went off, right? A. Yes, sir."

The cross-examination further developed that plaintiff was born and reared to the age of fifteen on a farm where there were cattle and horses. Since that time and in recent years he has owned one horse and has made many hunting and fishing trips by horse.

Contributory negligence was not one of the stated grounds of the motion for non-suit. However, the court in ruling on the motion said, "The evidence of the plaintiff clearly shows contributory negligence in the handling of the horse." It may be that the court, regarding the plaintiff as an ex-perienced horseman, concluded that he was negligent in permitting the tackle box to strike the horse's neck. Contributory neg-ligence is governed by the same rule appli-cable to negligence asserted against a de-fendant, and is generally a question for the jury, and may be made the basis of a non-suit only where reasonable minds could reach only one common conclusion, that the plaintiff was guilty of negligence which contributed to his injury. Stowers v. Union Pac. R. Co., 72 Idaho 87, 237 P.2d 1041.

In Kersten v. Young, 52 Cal.App.2d 1, 125 P.2d 501, 503, the plaintiff had been warned, " 'He is a high-spirited horse, but he will give you a good ride.' " And the keeper would not permit the plaintiff's six-teen-year-old daughter to ride the horse. Plaintiff was injured by a sudden turn of the horse. It was urged that the rider was negligent in accepting the horse after being thus forewarned. The court in discussing the issue said:

"The question presented, therefore, is would a person situated in appel-lant's position, possessing ordinary prudence, knowing what he knew and seeing what he saw, have used greater caution than he used and refrained from mounting or riding the particular horse in question?" 125 P.2d at page 504.

and after discussing the facts, said further:

"The decision must be left to the triers of fact where different conclu-sions may reasonably be drawn by dif-ferent minds from the same evidence. In the instant case it is clear to us that whether the situation in which he found himself was such as to impress upon the mind of appellant the danger incident to his mounting or riding the horse proffered by defendant, was for the jury to decide as a controverted is-sue of fact. Except in those cases in which, judged in the light of common knowledge and experience, there is a standard of prudence to which all per-sons similarly situated must conform, the question of contributory negligence is always one of fact for the jury to

decide under proper instructions." 125 P.2d at page 504.

We are not here concerned with "assumption of risk" because the ruling was not based on that doctrine. However, we call attention to the fact that the California court in the foregoing case held assumption of risk also to be a question for the jury, subject to practically the same rule governing the issue of contributory negligence. In this case it appears that reasonable men might well differ on the issue of contributory negligence. It was, therefore, a question for the jury.

On the question of the sufficiency of plaintiff's evidence to make a prima facie case, the applicable legal propositions may be stated as follows:

"Whether the bailor had knowledge, or probable cause for knowledge, of the dangerous propensities of the animal hired, has been held to be the proper test in actions for injuries to third parties, due to the exercise of such propensities, but not in actions for injuries to the bailee, the test in the latter class of actions being whether there was a failure to exercise due care to furnish a suitable animal." Anno. 12 A.L.R. 783.

"* * * one who lets a horse for hire, although not an insurer of the horse's fitness, is under an obligation, sometimes spoken of as an implied warranty, to furnish an animal which is reasonably safe for the purpose known to be intended, and for a failure to use due care to discover dangerous propensities in such animals, or to disclose them to the hirer, he may be held liable for personal injuries or death resulting from such neglect." Anno. 131 A.L.R. 847.

It has been held that such an action may be brought either in contract for breach of an implied warranty of fitness, or in tort for negligence in furnishing an unsafe animal. However, the form of action is of no real consequence, because the courts all agree that the bailor is not an insurer, and that a mere breach of the implied warranty is not alone sufficient ground for recovery. In addition thereto, the plaintiff must prove that the keeper had some knowledge, or the facts are such as to charge him with knowledge, of the unsuitability of the animal; or negligence in failing to take reasonable precautions to determine its suitability; or in failing to warn the prospective rider of the facts. So, whether the action be ex contractu or ex delicto, the required proof is the same. Dam v. Lake Aliso Riding School, 6 Cal.2d 395, 57 P.2d 1315.

In the foregoing case, 57 P.2d at page 1317, the supreme court of California, in a quote from Conn v. Hunsberger, 224 Pa. 154, 73 A. 324, 25 L.R.A.,N.S., 372, holds it to be the duty of a liveryman to inform himself of the habits and disposition of horses he keeps for hire. He must exercise reasonable care to ascertain such

facts, and if he fails to exercise such care he may be held liable even though he did not actually know the horse was unsuitable for the service intended. In discussing the nature of the proof required to show a breach of this duty of due care on the part of the bailor, the California court said:

"We agree with appellants that it is not always necessary for the bailee to prove actual acts of misbehavior on the part of the horse prior to the accident. But in some way the bailee must prove such facts as will justify a jury in finding that at the time and place in question the horse was unsafe and unsuitable for the purpose for which it was hired." Dam v. Lake Aliso Riding School, 6 Cal.2d 395, 57 P.2d 1315, at page 1318.

We agree that one act of sudden jumping or other misbehavior on the part of a horse would not ordinarily be sufficient to determine the character of the horse, depending of course upon the circumstances and the procuring cause. But, assuming the propensity of the horse to so act is established, proof that the liveryman had kept the horse over any considerable period of time, would justify the jury in concluding that he knew or should have known its characteristics. On the other hand, if the keeper had not kept the horse a sufficient time to become acquainted with it, he might be held negligent in hiring it to a bailee without warning him of his lack of knowledge of the horse. Conn v. Hunsberger, 224 Pa. 154, 73 A. 324, 25 L.R.A., N.S., 372, 132 Am.St.Rep. 770, 16 Ann.Cas. 504.

Viewing plaintiff's proof in the light of the foregoing principles, we think it was sufficient to present the question of negligence and contributory negligence to the jury and that the motion for non-suit should have been denied. Other cases which we have considered and which support this conclusion are: Dam v. Lake Aliso Riding School, Cal.App., 48 P.2d 98; McNeal v. Greenberg, Cal.App., 255 P.2d 810; Smith v. Pabst, 233 Wis. 489, 288 N.W. 780; Evans v. Upmier, 235 Iowa 35, 16 N.W.2d 6; Gober v. Nolan, 81 Ga.App. 16, 57 S.E. 2d 700, 15 A.L.R.2d 1309; Mateas v. Fred Harvey, 9 Cir., 146 F.2d 989; Fred Harvey Corp. v. Mateas, 9 Cir., 170 F.2d 612.

On the issue of the liability of the defendant, Morgan, the appellant offered in evidence plaintiff's Exhibit 1. Objections that no foundation was laid and (as to defendant Morgan) it was hearsay, were sustained. The exhibit is a reprint in pamphlet form of an article written by one Leverett G. Richards and published in "The Air Traveller." The article, and the accompanying pictures with their respective captions, contains matter tending to establish that Morgan was not only the owner of the ranch, but was actively engaged in its operation and that Hornback, therein referred to as "Top Hand", was his employee, perhaps as manager or foreman. As to foun-

dation, it appears from the testimony of defendant Hornback, called by plaintiff for cross-examination, that he and Morgan had the exhibit printed in the spring of 1948, and that it was distributed widely over the state by them, as a means of advertising and soliciting business for the ranch during the years 1948 and 1949. Thus the exhibit had an evidentiary bearing upon the question of the relationship of defendant Morgan to the operation of the ranch, and on the agency of Hornback, and thus upon Morgan's liability arising out of the claimed negligence. It is not a declaration of agency by Hornback. He testified that Morgan joined him in the publication. It is therefore a declaration or admission by Morgan contrary to the position he takes in this action. The exhibit should have been admitted. Groefsema v. Mt. Home Co-op Irr. Co., 33 Idaho 86, 190 P. 356; State v. Morris, 58 Or. 397, 114 P. 476; Proctor v. Appleby, 110 Wash. 403, 188 P. 481; Baxter v. Ford Motor Co., 168 Wash. 456, 12 P.2d 409, 88 A.L.R. 521; Jewell's Lessee v. Jewell, 1 How. 219, 11 L.Ed. 108; Klein v. Hoffheimer, 132 U.S. 367, 10 S.Ct. 130, 33 L.Ed. 373; 3 Jones Com. on Evidence, 2nd Ed., § 989; Hill v. Bice, 65 Idaho 167, 139 P.2d 1010. Cf. Griffin v. Clark, 55 Idaho 364, 42 P.2d 297; Lynch v. Bekins Van & Storage Co., 31 Cal.App. 68, 159 P. 822; Burchmore v. H. M. Byllesby & Co., 140 Neb. 603, 1 N.W.2d 327. As to the effectiveness of the exhibit to make a prima facie case against Morgan, see Hill v. Bice, supra; Cf. Griffin v. Clark, supra; Lynch v. Bekins Van & Storage Co., supra; Burchmore v. H. M. Byllesby & Co., supra.

It was also urged that plaintiff had not seen the exhibit prior to July 10th, the date of his injury, and that, therefore, his visit to the ranch was not occasioned by any representation contained therein, and for that reason it could not support his claim. The exhibit does represent that wranglers and guides look out for the safety of guests. However, plaintiff's action is based upon negligence and the implied warranty of the suitability of the horse, so that this objection should not have prevented the introduction of the exhibit, its main purpose being evident to establish liability on the part of Morgan, and not to prove an express warranty.

The ruling of the court excluding testimony by the witness Simpkins is also assigned as error. It appears that after the accident Simpkins, preparatory to leaving the ranch, went to the barn for some tackle or fishing gear, and there observed or heard actions or words on the part of Hornback which would indicate that Hornback knew the horse was dangerous. The question referring to the tackle was "How did you get them?" This the court ruled out as immaterial, and counsel for plaintiff made the following offer of proof:

"I offer to prove by this witness that the defendant Mr. Hornback knew and treated the horse that he furnished Mr. Koser on the occasion involved in this

case as a vicious, intractable horse, unsuitable entirely for the purpose—for the purpose for which he was used and furnished to Mr. Koser.

"The Court: That isn't the offer—not an offer in accordance with your question and objection which I sustain. That is entirely extraneous from that.

"Mr. Elliot: This question is leading up to and calling the witness' attention to the question and it is the only way that I know of avoiding a leading and suggestive question.

"Mr. Blaine: I object to that offer on the ground no foundation has been laid for the question.

"The Court: The objection is sustained. The offer is denied."

■ The question asked was not material to the issues. However, it was apparent that it was a preliminary question, and while appellant could have asked a question going more directly to the testimony which he sought, no harm would have been done by an answer to the question, and under the circumstances the court should have permitted counsel to approach the material matter in his own way, so long as it did not unduly extend the inquiry. It is better to indulge in a few unnecessary preliminaries than to exclude competent and material evidence. However, the offer of proof here made was insufficient because it

did not advise the court of the facts to which the witness would testify. In such a situation the court is unable to determine the admissibility of the proof proposed. We, therefore, cannot predicate reversible error upon this ruling. 64 C.J. 125, Trial, §§ 144, 145 and 148.

■ Upon the trial the plaintiff offered in evidence his amended complaint and the answer of each of the defendants thereto. The court's ruling excluding these exhibits from evidence is correct. In this jurisdiction the pleadings upon which the cause is tried are before the court and jury for all proper purposes. 3 Jones Com. on Evidence, 2nd Ed., § 1004; Hill v. Bice, 65 Idaho 167, 139 P.2d 1010. Cf. Shurtliff v. Extension Ditch Co., 14 Idaho 416, 94 P. 574; Anderson v. Hoops, 52 Idaho 757, 19 P.2d 908; 90 A.L.R.Anno. 1393. Any admissions in the answers could be called to the attention of the jury in support of plaintiff's case without having the answers themselves admitted in evidence. The plaintiff's own pleading, when offered by him, would constitute nothing more than a self-serving statement of the facts which he claims entitle him to relief.

Appellant also assigns the adverse ruling of the court on his demurrer to the answer of Hornback. The demurrer attacked the answer on the ground of uncertainty, alleging that it does not appear whether the lease, under which Hornback claimed to operate the ranch, was in writing or what its

**34**

terms or conditions were. We find no merit in this assignment. Hornback's defense is not based upon the lease. Hence, the lease, so far as he is concerned, need not be set out. The relationship of landlord and tenant, without more, would ordinarily be sufficient to accomplish the purpose of shielding the defendant Morgan from liability. If it were the contention of the plaintiff that the lease, by its terms, imposed a liability upon the landlord for negligence of the tenant, he might inquire into its provisions. But, where it appears that the relationship of landlord and tenant is all that is material, the defendants will not be required to plead more. Appellant suggests that if the lease were for a term of years and oral, it might be voidable under the statute of frauds, or even though in writing, void for failure of lessor's wife to join therein. Assuming Hornback was operating the ranch under a void lease, that would not ipso facto make him an agent, employee, or partner of, or joint venturer with, the lessor Morgan. So far as plaintiff is concerned, the relationship between the defendants would still be that of landlord and tenant. Quayle v. Stone, 43 Idaho 306, 251 P. 630.

The judgment is reversed and the cause remanded for a new trial. Costs to appellant.

PORTER, C. J., THOMAS and KEETON, JJ., and BAKER, District Judge, concur.