WALDEN, Judge.
These appeals, here consolidated for purposes of opinion, are brought by defendant, cross-claimant, Fort Pierce Gas Company, from final judgments entered adverse to it in a suit at law for damages.
A propane gas storage tank located at the residence of the Toombs family exploded causing the death of a child, personal injuries to others, and certain property damage. The tank had been manufactured seven years before by defendant, Maddox Foundry & Machine Works (herein called “Manufacturer”). The tank was owned by defendant, Fort Pierce Gas Company (herein called “Owner”). It had been in use by the Toombs family for a period of *671 about six years in the supply of gas to their home appliances, which gas was distributed to them by the Owner. The undisputed relationship between the Owner and the Toombs with reference to this tank was that of bailor-bailees, with the bailment being for their mutual benefit.
The several plaintiffs may be classified into two categories — (1) members of the Toombs family and (2) mere bystanders without claim of privity or relationship with defendants. They were permitted to join in a suit against the Manufacturer and the Owner.
Defendants were charged with having been guilty of breach of implied warranty and of having been guilty of negligence which proximately caused the explosion and resulting damages. The Owner cross-claimed against the Manufacturer, using the same two theories.
Jury trial ensued. The Manufacturer was exonerated from liability as concerns the complaint and cross-claim. However, the verdict returned damages in favor of plaintiffs and against the Owner. The Owner appeals the award of damages to plaintiffs in case No. 73. It also appeals the denial of its cross-claim against the Manufacturer in case No. 74.
The properties of propane gas are such that it may be liquified by placing it under pressure. It is usually handled and distributed as a liquid in a tank under pressure. Its storage tanks, therefore, must possess sufficient strength to withstand this pressure. Also, a rise in temperature will cause the liquified gas to expand in volume. All tanks on this account should always be only partially filled so as to leave room for expansion to accommodate possible temperature changes.
Two distinct causative factual concepts were urged and defended before the jury. One assault was that the Owner was guilty of negligence by overfilling the tank a few hours prior to the explosion. The other advanced was that the tank was defectively manufactured and subject to rupture by reason of improper welds.
Considering first the award of damages-in favor of plaintiffs and against the Owner, the point is made by the Owner that reversible error was committed in presenting the case to the jury on the theory of implied warranty because that doctrine was-not available to these plaintiffs. Because-our consideration of this question and ultimate decision requires the reversal of this-part of the case, the other points raised by the Owner need not be answered.
Extracted from plaintiffs’ complaint is; this sole pleading support for the doctrine-of implied warranty:
“ * * * the Fort Pierce Gas Company impliedly warranted that the 'gas tank’’ placed at the above-mentioned duplex would be safe for the storage of gas and that no harm would come to the occupants of said duplex as a result of the placing of said 'gas tank’ at said location for the storage of liquified petroleum gas.”
This is a clear portrayal of “absolute-warranty” so as to make the Owner an insurer against injury under all circumstances-without respect to the nature of defect in-the tank. The case was duly presented and' the jury charged on the basis of absolute-warranty, this being the warranty customarily imposed upon the manufacturer.
The law as to products liability is rapidly expanding and particularly in the area of warranty. As it develops in an effort to> meet the new challenges in a humane and reasonable manner there are necessarily some holes and flaws in this new fabric of law and principle. See Matthews v. Lawnlite Company, Fla.1956, 88 So.2d 299; 12 U.Fla.L.Rev. 241, Implied Warranty in. Florida. Fortunately, however, our survey of the case law of this state reveals that the problems here found have been earlier considered with the result that we are able to-employ precedent in our search for the proper answer.
*672 Are the bystander plaintiffs entitled to the benefit of the implied warranty doctrine in their claim against the Owner? No, they are not. The courts of our state have developed the position that, in order for a claimant to cross the threshold, re.gardless of other refinements and requirements, the injured bystander would have to have been a user of the product at the time. Rodriguez v. Shell’s City, Inc., Fla. App.1962, 141 So.2d 590. Here these bystanders were not users and neither were they in privity. Their remedy is in an action for negligence and not warranty. Carter v. Hector Supply Co., Fla.1961, 128 So.2d 390.
Are the bailee-plaintiffs entitled to the benefit of the implied warranty doctrine in the form and to the extent pled and charged in their claim against the Owner-bailor? The answer is, “No.” In the case of Brookshire v. Florida Bendix Co., Fla.App.1963, 153 So.2d 55, 58, the liability of a 'bailor was defined:
“ * * * As to the third, the warranty theory, there is no absolute liability on a bailor or lessor of personal property who rents or permits its use by another. The liability of a manufacturer, under the doctrine of implied warranty, has not been extended to one who merely rents or bails personal property [which it has purchased from a manufacturer] to another. The extent of obligation of the bailor is a duty on his part to exercise due care to furnish an article in a reasonably safe condition. See: Clarkson v. Hertz, Corporation, 5th Cir., 1959, 266 F.2d 948; 6 Am.Jur., Bailments, § 195, pp. 310-311.”
'To even stronger effect is the encyclopedic ■treatment found in 8 Am.Jur.2d, Bailments, § 150.
Thus, it was error to impose the burden of absolute liability upon the Owner as was done in the instant case. What was •the Owner’s proper burden? Its real and lesser warranty was that it had exercised reasonable care to ascertain that the tank was safe and suitable for the storage of propane gas. Tierstein v. Licht, 1959, 174 Cal.App.2d 835, 345 P.2d 341. See also compiled cases in 46 A.L.R.2d 404. A breach of this warranty must be pled, proven and charged with the same specificity as would be required in a negligence action. Koser v. Hornback, 1954, 75 Idaho 24, 265 P.2d 988, 44 A.L.R.2d 1015. This was not done here. There was no point or proof of any breach or of product defect or lack of suitability which the Owner knew of or could have discovered by exercise of reasonable care. Plaintiffs chose to limit their case against the Owner to the Owner’s act of negligence in overfilling the tank — a matter unconnected with product defect or suitability.
Finally, we look to the Owner’s discontent as to the judgment entered on his cross-claim against the Manufacturer. The Owner says only that it was contrary to the manifest weight of the evidence. We disagree. The evidence, largely technical and by way of opinion, was conflicting. Our assessment of the record is that the jury, believing what it had a right to believe and disbelieving that which it had a right to disbelieve, was authorized to find that the Manufacturer was not guilty of breach of warranty or negligence in the fabrication of the tank some seven years prior. Judgments based on conflicting evidence will not be disturbed on appeal. See Midstate Hauling Co. v. Fowler, Fla.1965, 176 So.2d 87; Southeastern General Corp. v. Gorff, Fla.App.1966, 186 So.2d 273.
The judgment appealed in case No. 74 is affirmed.
The judgment appealed in case No. 73 is reversed for a new trial.
SMITH, C. J., and ANDREWS, J., concur.